IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

APR 06 2018

JEFFREY P. COLWELL
CLERK

Civil Action No. _____
(To be supplied by the court)

__Justin Mohn_____, Plaintiff.

v.

__Progressive Insurance_____,

_____,

_____,

_____, Defendant(s).

(*List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.*)

**EMPLOYMENT DISCRIMINATION COMPLAINT**

**NOTICE**

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**A. PLAINTIFF INFORMATION**

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Justin Mohn   1625 E Woodmen Rd Apt 49   Colorado Springs, CO 80921
(Name and complete mailing address)

719-432-8416   justindmohn@gmail.com
(Telephone number and e-mail address)

**B. DEFENDANT(S) INFORMATION**

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1: Progressive Insurance
(Name and complete mailing address)

_____
(Telephone number and e-mail address if known)

Defendant 2: _____
(Name and complete mailing address)

_____
(Telephone number and e-mail address if known)

**C. JURISDICTION**

*Identify the statutory authority that allows the court to consider your claim(s): (check all that apply)*

☑ Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. (employment discrimination on the basis of race, color, religion, sex, or national origin)

___ Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, et seq. (employment discrimination on the basis of a disability)

___ Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621, et seq. (employment discrimination on the basis of age)

___ Other: *(please specify)* _____

D. **STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action and the specific facts that support each claim. If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE: Discrimination including discharge

The conduct complained of in this claim involves the following: (*check all that apply*)

- ___ failure to hire
- ✓ failure to promote
- ✓ termination of employment
- ___ other: (*please specify*) _____
- ___ different terms and conditions of employment
- ___ failure to accommodate disability
- ___ retaliation

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

- ___ race
- ___ color
- ___ religion
- ✓ sex
- ___ national origin
- ___ disability
- ___ age

Supporting facts:

Please see attached complaint to EEOC.

3

CLAIM TWO: _____

The conduct complained of in this claim involves the following: (*check all that apply*)

 ____ failure to hire      ____ different terms and conditions of employment

 ____ failure to promote    ____ failure to accommodate disability

 ____ termination of employment   ____ retaliation

 ____ other: (*please specify*) _____

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

 ____ race    ____ religion    ____ national origin    ____ age

 ____ color    ____ sex     ____ disability

Supporting facts:

4

E.  **ADMINISTRATIVE PROCEDURES**

Did you file a charge of discrimination against defendant(s) with the Equal Employment Opportunity Commission or any other federal or state agency? (*check one*)

✓ Yes (***You must attach a copy of the administrative charge to this complaint***)

___ No

Have you received a notice of right to sue? (*check one*)

✓ Yes (***You must attach a copy of the notice of right to sue to this complaint***)

___ No

F.  **REQUEST FOR RELIEF**

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "F. REQUEST FOR RELIEF."*

Colorado State maximum or $300,000 from Progressive Insurance to Plaintiff. Please see attached complaint.

G.  **PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

*Justin Moh*
(Plaintiff's signature)

4/3/18
(Date)

(Revised December 2017)

5

## REQUEST FOR RELIEF

Plaintiff requests the following relief:

Progressive Insurance pay to Justin Mohn the Colorado State maximum or $300,000. Please see attached complaint.

Date: 4/3/2018

Justin Mohn
(Plaintiff's Original Signature)

1625 E Woodmen Rd. Apt 49
(Street Address)

Colorado Springs, CO 80920
(City, State, ZIP)

719-432-8416
(Telephone Number)

1

Justin Mohn
1625 E Woodmen Road, Apartment 49
Colorado Springs, CO 80920
Phone: 267-243-7796 Email: justindmohn@gmail.com
October 28, 2017

**RECEIVED**

NOV 0 1 2017

Equal Employment Opportunity Commission
303 E. 17th Avenue, Suite 410
Denver, Colorado 80203

**EEOC - DENVER
FIELD OFFICE**

Dear Equal Employment Opportunity Commission,

I was employed at Progressive Insurance's Colorado Springs office located at 7250 Campus Drive, Colorado Springs CO, 80920, from October 24th of 2016 until August 17th of 2017. I complained of discrimination around August 7th, experienced retaliation thereafter, complained of retaliation, and was put on administrative leave for one week up to the 17th, then terminated after this one week of leave. This discrimination is primarily gender discrimination, which occurred not only to me, but other male employees at Progressive in their "Academy" process, which is their hazing process all new employees go through after they are hired and even after training to see if they fit in with the company's business model and corresponding culture. As Progressive proved with their Academy process, this hazing or cookie-cutting process is seemingly not to optimize business or benefit our society, in fact, the reader may find it is the complete opposite, as this cookie-cutting process is to let a culture of a certain personality type and capacity thrive, which I will get to shortly, since I, and I'm sure many others have evidence that Progressive proudly disallows any male who is perceived as overqualified, overeducated, and not of this personality type to work at their company – after they hired us, by enforced attrition.

As an author of two books and a musician of one album, I know showing a story is better than telling a story, and so I will now describe my brief experience at Progressive, which was impressively, the worst work experience I've ever had although I'm grateful for what I learned, and which led me to file this complaint and me to consider publishing a book to muckrake Progressive in order to progress our society, for Progressive is most digressive to our society.

My downfall as an employee at Progressive was letting my true personality and capabilities show at Progressive right away, by showing the fastest learning curve in training and thereafter by being an early top performer which Progressive has records of, by sharing upwards of a dozen ideas in training alone which received feedback of desiring my ideas to be shared formally, which I attached, and, my true downfall, was by receiving the most frequent amount of compliments from customers and by making my Academy coach laugh every time we met in our

one on one meetings and getting along too well with others at the company as well – needless to say, I stuck out immediately in Progressive's culture. My supervisor warned me, that nobody goes anywhere at Progressive if we do not fit in with Progressive's culture, which I see as a plausible business model, if not for this culture being a strict dog-eat-dog mentality enforced by upper management such that the men who are top performers, relatively more educated than other men, and perceived as more popular and or genetically gifted are either not allowed to work there, or have to take measures I'm not aware of in order to earn a career there and not get fired.

Progressive's reason for terminating me revealed a sick aspect of Progressive's business model, for my Academy coach targeted me to destroy my strong career path trajectory which other bosses sat back and watched, likely filled with glee. What was shocking to me and may be to the reader at first, is the evidence shows the main reason for getting rid of me seemed to be due to my intelligence, overqualifications, overeducation, and or possibly due to me having empathy – reasons out of a science fiction novel, yet which makes sense in this day and age for a company, which is why I know submitting this complaint will resonate with many people. In addition to asking for a right to sue, I will also likely publish a book to publicly muckrake Progressive Insurance unless they wish to settle out of court, for if every company upheld a cookie-cutting process like Progressive, then we would systematically dumb-down our society by getting rid of all artists, scientists, and anyone else of a certain level of intelligence, education, or empathy. It is scary to think about the type of trend it could create over a long period of time if every company weaned out all men who are considered either "too intelligent" or "too empathetic," – this would get rid of chivalry for good, and is analogous to getting rid of the knights who fought for righteousness in the medieval times – which I say because it seems we once again live in a feudal system in which loyalty alone in employees at companies like Progressive is all that is desired to survive, nothing more, nothing less, while loyalty and top performance from someone like me does not allow for survival, which is one definition of discrimination. Just to put things in perspective at Progressive, the girls around my age, in their 20s, who sat next to me used to just put customers on hold and have conversations with each other about their home lives instead of helping their customers and the company, and many people like this are still working there, as this is the only personality type which is desired - people without drive and without constant awareness. Progressive doesn't desire hardworking men with college degrees who are authors and musicians, who share many ideas, and receive many compliments. This is why I wish to charge Progressive with gender discrimination, and if this goes to court, I hope to progress our society by evolving discrimination law for the courts to consider adding relative IQ, education level, youth, and or status as an artist as protected classes so that the aforementioned trend does not occur over time.

I don't mean for this correspondence and my plans for a lawsuit and muckraking book to put down anyone or everyone working at Progressive by hinting at all 30,000 employees having little to no empathy and being in a lower IQ bracket or spreading a conspiracy that these employees are possessed persons or demons given tenure by Satan to do his dirty work, for these things are probably not the case, I mean to convey, that in terms of relativity, as an author, musician, and entrepreneur willing to share my ideas, my perceived traits of empathy and intelligence - which

showed through my performance metrics and amount of compliments from customers, made me stick out like a sore thumb at Progressive compared to everyone else who has evidently ever worked in such an entry level role, which bosses and other employees emphasized to no end, and which I wouldn't disagree with so much as their approach to my employment there by proving their control over my career through institutionalizing me and attempting to get rid of me (successfully) as soon as they realized I was on too fast of a learning pace or was too ethical towards customers as male employee, regardless of me getting along well with everyone and me just wanting to help the company and customers. This is obvious because they kept me employed when I gathered evidence that they were going to terminate me in Academy, then they just put me on a longer term trend for termination instead of taking responsibility for their actions and doing the right thing by promoting someone like me to a fitting role instead of getting rid of me for being overqualified.

To help show how I was going to get terminated in Academy and how I temporarily extended my expiration date at Progressive, attached is all the email correspondence I was able to print out before they put me on administrative leave and fired me, since I did not know the password to my Progressive Outlook email to log in at home, and they acted very fast when I complained, which occurred because they were not promoting me as was expected after my Academy process in which they basically told me I was too educated or overqualified for my current role and had tried to terminate me when one coach, I believe her name was Sheila, told me to my face after shadowing my phone calls that I was on a somewhat unprecedented learning and performing pace and should graduate Academy around week 7 or 8 which only previous employees did, and so when I brought this up to my coach, Greg Lofthus, the one person in charge of monitoring me and deciding whether I stay or go, he forcefully laughed and said I would graduate around week 10 to 12 when everyone else normally does, however week 14 or 15 rolled around, consisting of increasingly harassing one-on-one meetings with Greg, which may be verified by Lane Goodwin, the coach who sat next to Greg, and I was the only person in my training class who hadn't graduated yet when I was on the fastest pace and was now getting threatened with performance plans and termination by Beverly Auld-Feldman, Greg's boss, who not only failed to monitor Greg, but was seemingly siding with Greg's point of view that I was on too fast of a learning pace or was too good of a person to work there, so I eventually emailed Beverly and copied another supervisor, Rebecca Coffey about my stellar performance while still in Academy, which set off the warning flags and so I magically graduated from Academy that day or else I would have been terminated shortly after since they were threatening my career for them not graduating me… I'm just curious how many good, hardworking, and intelligent men across the nation received a black mark on their resume and had trouble finding work or a home after working at Progressive and being set up for this 1 2 combo by an Academy Coach and Manager like Greg and Beverly such that they have a system to fire people within a couple months after hiring if they think they're too smart or too good of a person to work there. The reason why I state Progressive's Academy is a cutting-cookie process, is because Greg and Beverly don't purely make the decisions – they meet with the other coaches and managers to discuss the new hires, so when I emailed another supervisor, either good consciousness momentarily took over the decision to let me graduate, or they got scared that I would sue them so they let me graduate, as we saw how I magically graduated Academy after this email, for if it was up to only the

coaches/managers who meet to discuss new employees, I would have been fired if not for bringing an outside supervisor in on it.

So, my main proof that Progressive was trying to terminate me for discriminatory reasons initially in Academy comes from the fact that I had to email Beverly and copy another supervisor in order to graduate last instead of being terminated in Academy when I should have graduated first, the email of which I attached as well as a CYA email Beverly sent me just before they graduated me attempting to show that she was not at fault – but she was, so I responded in the only manner I could that made it obvious that Greg was at fault and she was only questionably at fault, then she was promoted by site director Charlie Baughman shortly after I graduated whilst Greg did not get the promotion he was trying for (by the end of my Academy, I think Beverly threw Greg under the bus for a promotion or else Charlie promoted Beverly so she could follow my career and terminate me later, which she did have a hand in)… After graduating from Academy and continuing to perform at a top level, I and likely many others were waiting for me to get a promotion for months due to my Academy experience or else another climactic moment resulting in a lawsuit, as I talked to my new supervisor after Academy, Rebecca Coffey, and Charlie Baughman about a promotion ASAP, however, it was becoming clear they were going to make me make them take responsibility for their actions. I applied to a technical writing position, and I finally complained to HR via the attached email, and although the only logical solution was to promote me since there was evidence that other employees above me with control over my career were trying to terminate me for too fast of a learning and performing pace, instead of promoting me to take responsibility for their actions, they retaliated against me by changing my work schedule to something I had once told them my body physically would have trouble handling, and then denied me the promotion for the technical writing position. So, I complained to HR of retaliation by email, and they immediately put me on administrative leave for one week before firing me at a frightening pace such that I could not gather more evidence against them, as if Progressive thinks since they are part of a state-sanctioned industry then they suspect all state and government bodies like the EEOC would support this behavior and business model, who my supervisor told me their business partner HR considered a "crazy" culture, to which I cannot disagree. Shortly after my first complaint in August of this year, I also met with HR Representative Jim "Steve" Lawson, who took every HR approach I expected to dilute and deny discrimination and then some as a male standing about 6'2" who told me he doesn't like when people look at him funny and if he doesn't like someone's tie, as he glanced at the one I was wearing while I spoke to him from my 5'8" stature, so I refused to converse with him again unless the conversation was recorded and I received a copy thereafter – and so that was the last time we conversed in person, although Jim was kind enough to call me in a harassing and retaliatory manner while I was on administrative leave, with at least one of my bosses, Tamara Marchese in the room, who was smart enough to not add anything onto Jim's rhetoric, although Tamara is the person who fired me in the end by a phone call after one week of administrative leave.

Sure, I'm an author, musician, and entrepreneur who was willing to devote my work ethic and intellectual property to Progressive, but let's be real, God knows I was not the only male on a faster pace than others who was purposely held back in Progressive's Academy process so we

didn't get promoted too fast, or to make us morbidly unhappy in attempts to force us into constructive discharge, and so if the EEOC were to reach out to other males at Progressive, such as ex-coworkers Christopher Lewis and Eric Foster (the only other male in my training and Academy class of a dozen new hires) of Colorado Springs, Co, the EEOC would find out that these males experienced what I did also, just not to the same extent – what I experienced was discrimination for the sole purpose of termination, however, this could very well be a class action lawsuit. I realize someone may come off like the boy who cried wolf by complaining too much, however, one would quickly conclude that from my history with criminals or otherwise sketchy people who seem to find purpose in life in targeting me and others like me, that I am forced to fight battles like this through the law and through artwork, not just to defend myself, but to set an example for others who wish to break the Golden Rule, which Progressive actually claims as one of their core values, which was another reason for my complaint. Progressive's Academy process, along with other circumstances outside of work, I repeat the following did not happen at work but at home and are detailed in my second book, such as my experiences of assault, stalking, and impersonation from "fans," which, in addition to Progressive's Academy process, began to play with my belief system for more emotional distress than I ever imagined and I had trouble forcing myself to collect evidence against Progressive not just because I was institutionalized but because I was in a state of shock and disbelief that this was happening at work too and I would have to pursue a giant company for coming after me for these reasons. Upon working at Progressive, it began to feel like there is a system in place in our world or country to allow others to harass or bully artists or others of influence in an obsessive, demonic way in every facet of our lives, whether in work or out of work – this Academy process felt like Progressive hires people like me just to be the tenured employee's punching bags, which is truly demonic in nature if these are the true intentions – although the reason is likely that their business model thrives off of over hiring to play a game of musical chairs with employees and make them compete against each other to wean people out, however, Progressive purposely weans out men who are above average and loyal to keep only those men who are average and loyal, whilst a female who is above average and loyal gets favored and or promoted, like Beverly Auld-Feldman, who is quick to brag about the entitlement she had by her early 20s of being married, having a home, and an established career at Progressive – and to the best of my knowledge, I agree this is rightfully so for her and other hardworking, intelligent female employees, it's just wrong to have Progressive's current approach to hardworking, intelligent male employees, for it is not equal.

The best way to resolve this complaint, is Progressive settling out of court with me as I offered to them as one of the possible solutions along with simply giving me the expected promotion as seen in the attached email I sent to HR after negotiations with upper management of my expected promotion were falling through. Although my preferred option was to continue working for Progressive as I stated to them, I realize the amount I offered to start settlement negotiations at with Progressive was perhaps frighteningly high to them, however, I wasn't, and still am not happy with Progressive's proud culture and business model which upholds all the rumors of the dark sides of insurance, and so I must remind the reader that any parts of the attached emails which seem fiery, are so because of how I and others are treated at these companies whilst keeping in mind I was attempting to reach resolution foremost by means of continuing to work at

6

Progressive. Although Progressive is not Too Big To Fail, I advise Progressive to settle out of court so that I do not sue or muckrake them, since Progressive is a financial institution and a class action lawsuit in addition to me publicly revealing corruption/a violation of core values, ethics, and laws could hurt our economy if Progressive's problems cause Progressive to go under and not recover. However, justice is of upmost importance, so if Progressive does not settle out of court for a negotiable $50,000, in addition to using my publishing capabilities for muckraking this company, I wish to sue Progressive for the Colorado State maximum, which I believe is $300,000 (unless the maximum is different) as well as the involved individuals Greg Lofthus for $25,000, Beverly Auld-Feldman for $50,000, Jim Lawson for $100,000, and Charlie Baughman for $100,000. The reason for these staggered amounts is as I told Jim Lawson for the reason I complained against all of these individuals to HR, if there's a bad dog, you don't blame the dog, you blame the owner - so I don't really blame Greg for coming after my career, any of the Academy coaches likely would have done so as they've been trained and is their personality type, I blame Beverly a bit more than Greg, but she's still in the same boat as Greg for the most part, it's really the fault of Charlie Baughman for implementing such a regime at his site and HR Reps like Jim Lawson for failing to do anything but try to deny discrimination and proceed to retaliate, and to be fair, I did tell Jim that individuals, not just the company, take responsibility for their actions if the issue turns into a legal issue, so he also sided with Progressive's initial stance that I should be terminated for discriminatory reasons, knowing of the consequences. It seems Progressive has brilliantly trained their employees, or has weeded them out through the Academy process, to act as a hive and seemingly sacrifice their careers and prosperity should a lawsuit arise in the name of discrimination for their company's business model and corresponding culture. If the EEOC finds in their investigation that Progressive's Colorado Springs Academy process is controlled by other individuals besides the aforementioned, I will reconsider who and how much I plan on suing for and whose names, if any, should be revealed through the media or by published works. I will look for legal representation, if needed, upon a charge of discrimination against Progressive and or the aforementioned individuals, however, I can, until further notice, act as my own legal representation to negotiate settlement and release of claims, but I'll hire a lawyer to sue if settlement fails.

Despite my negative experience at Progressive, I'm even willing to discuss my intellectual property in a settlement and release agreement or other related documentation, because it's a shame for ideas to not be implemented due to this quarrel if they can benefit society, and I would consider it stealing if Progressive used my ideas after firing me since I never formally shared them, only discussed them with my trainer, Briana Vannier, before Academy, as seen in the attached documents, who told me she didn't tell anyone I had these ideas but provided me feedback, which is all I was looking for so I could develop the ideas, get rid of trivial ideas, and share them formally with the company, which I quickly decided not to do as soon as I realized the purpose of the Academy process. Briana signed her name as B on these documents after providing her feedback, likely because, as one of the trainers, who were seemingly the only department of consistently good people at Progressive, she knew I would get targeted immediately in Academy after training and so she was afraid my presence alone would result in a lawsuit – if so, she was right. The reader will also notice the large amount of extra work and

innovation I was willing to put into Progressive from viewing these attached documents, if only they didn't discriminate against me...

Another reason I would hope for Progressive to settle out of court instead of me publishing the aforementioned book and suing them, although it would be out of my control after I publicly reveal the allegations and alleged people, is, I would hate if the turnover rate which Progressive causes from this regime and likely results in homelessness from ex-employees in addition to the perceived racket of the insurance industry, causes the alleged individuals or Progressive's property to get physically harmed, damaged, or otherwise physically targeted by others (not me!) who they have wronged in this relatively small city, or else nationwide, for I do want to state that violence or chaos is by no means my intention of publishing a book and contacting the media to muckrake Progressive or these individuals, and in fact, there will be a disclaimer in the beginning of the book emphasizing this, should it need to be published. Also, although nothing is set in stone, I think it would be unfortunate, if not unfair, for all of Progressive's employees to be associated to a book titled "The Secret of Progressive Insurance: How Crooks, Narcissists, and Sinners Thrive in America's Capitalism," or something of that nature, just because of the actions of a few individuals revealing Progressive's business model and or culture. And, although I feel such socially digressive issues like this at Progressive are important to expose in order to progress our society as muckrakers did back in the Progressive Era (these puns are all intended), I do feel it is unfair to me and my fans for me to have to use my time suing and muckraking this company and individuals instead of writing other literature or creating music with said time all because Progressive as a company or these individuals acting on behalf of Progressive hate the idea of someone like me thriving at their company, regardless of how much I could help their company thrive, but I'll gladly publish it if they don't settle out of court with a secrecy clause in the settlement and release document.

In addition to confirming many people's suspicions or just pre-existing knowledge about the insurance industry, this book would include a short story about a Progressive customer whose identity and call date will remain a secret for Privacy Laws, who I was on the phone with for over an hour as she yelled and cursed at me to help fix a common issue on her insurance policy which required supervisor's authority to fix and caused an outstanding balance of $2000, and this customer stated she was recently homeless and would be homeless again from this bill, which I had to call 3 supervisors to resolve after the first 2 supervisors refused to help her and the 3rd supervisor fixed the issue immediately because it's an issue Progressive would normally fix without hesitation for anyone, but evidently not if there's a chance to make a hardworking woman of certain demographics homeless again; and so it becomes obvious why they wouldn't want male employees like me to climb the ranks if I prove on recorded phone calls that I will always do the right thing even if it means not making a little more money off someone – I knew if I got off the phone with her as the first two supervisors would have done then nobody else at Progressive would have helped her and she would have ended up homeless, again, so I didn't blame her for one second for cursing off me and my wretched employer. Just to be clear, this last experience had nothing to do with my termination, nobody ever questioned that I was in the right, only the third supervisor questioned why the first two supervisors didn't do their jobs to help a customer avoid homelessness – I didn't say anything, but I think I know the answer, they

didn't do their jobs because they wanted the customer to become homeless, and so statistically speaking from these 3 supervisors we can estimate this is the mentality of about 2/3 of Progressive's culture who sneak past Academy, although from my observations, I'll bet it's more. Regardless of the EEOC's decision about charging Progressive with discrimination so I can sue them, unless my music and book sales take off or I get a much better job, and even then possibly still, I will write and publish this book to muckrake Progressive for I feel it is of upmost importance to expose this seemingly demonic mentality at Progressive and possibly other companies so it does not spread, and, if for any reason during this case and or investigation I believe Progressive has committed white collar crimes such as bribery or spoliation of evidence, since not all relevant emails were retrieved by me, I will not hesitate to reach out to the Office of Inspector General, Department of Labor, and or FBI. Just know, I'm not trying to cause a ruckus, for secrecy is an option, I just want justice and hate the idea of people like me being put on a much worse path financially than others in my city simply because of who I am when I have so much to contribute, and so I want to fight this battle so nobody else has to ever again. If you have any other questions or concerns, please do not hesitate to reach out to me – I look forward to hearing back from the EEOC and or related entities. Thank you for your time.

Sincerely,

*Justin Mohn*

Justin Mohn

267-243-7796

1625 E Woodmen Rd

Apt 49

Colorado Springs, CO 80920

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>541-2018-00224 |
|---|---|---|

**Colorado Civil Rights Division** and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.)<br>**Justin Mohn** | Home Phone (Incl. Area Code)<br>(719) 432-64■■ | Date of Birth |
|---|---|---|
| Street Address<br>**1625 E Woodmen Rd Apt 49, Colorado Springs, CO 80920** | | |

RECEIVED DEC 1 9 2017 EEOC DENVER FIELD OFFICE

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>**PROGRESSIVE INSURANCE** | No. Employees, Members<br>**500 or More** | Phone No. (Include Area Code)<br>**(800) 776-4737** |
|---|---|---|
| Street Address<br>**12710 Voyager Parkway, Colorado Springs, CO 80921** | | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Street Address | | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **10-24-2016**   Latest: **08-17-2017**
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Progressive Insurance on October 24, 2016 as a call center customer service consultant (representative). During my tenure at Progressive it was obvious that I was a high achieving and hardworking employee with great upward mobility potential; however, I was perceived as overqualified and overeducated when my capabilities were shown. I received the most frequent amount of compliments from customers and I was warned that nobody goes anywhere at Progressive unless they fit the company's culture, being lax, not being productive, putting customers on hold and having personal conversations about home lives instead of working. I complained to HR in August 2017 about this issue and was placed on administrative leave for one week and ultimately terminated on August 17, 2017 for alleged behavior. I also applied for a technical writing promotion in August 2017 and was denied the position.

I believe I have been discriminated against because of my gender, male, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br>I declare under penalty of perjury that the above is true and correct. | NOTARY — When necessary for State and Local Agency Requirements<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
|---|---|
| X 12/7/17        X *Justin Mohn*<br>Date                    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

EEOC Form 161 (1/08)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Justin Mohn<br>1625 E Woodmen Rd Apt 49<br>Colorado Springs, CO 80920 | From: Denver Field Office<br>303 East 17th Avenue<br>Suite 410<br>Denver, CO 80203 |
|---|---|

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 541-2018-00224 | Holly B. Romero,<br>Supervisory Investigator | (303) 866-1341 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act**: This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS from your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA)**: EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____
Elizabeth Cadle,
**District Director**

JAN 0 8 2018
*(Date Mailed)*

Enclosure(s)

cc: THE PROGRESSIVE GROUP OF INSURANCE COMPANIES

I hereby certify that a copy of the foregoing pleading/document was mailed to Progressive Insurance (defendant(s) or counsel for defendant(s)) at 12710 Voyager Pkwy (address) on April 4th, 2018. Colorado Springs, CO 80920

_____
Plaintiff's Original Signature

When you have completed the complaint and all of the necessary forms as described in these instructions, the completed complaint and forms should be mailed or hand delivered to the Clerk of the United States District Court whose name and address are:

Jeffrey P. Colwell, Clerk
Alfred A. Arraj United States Courthouse
901 19th Street, Room A105
Denver, CO   80294-3589

If you have any questions or seek additional information, please contact the office of the Clerk of the Court at 303/844-3433. The court's business hours are from 8:00 a.m. to 5:00 p.m., Monday through Friday.

(Rev. 8/24/15)  4

AO 398 (Rev. 12/93)

# United States District Court
## District of Colorado

## NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SERVICE OF SUMMONS

TO: (_____

as (_____ of (C) _____

A lawsuit has been commenced against you (or the entity on whose behalf you are addressed). A copy of the complaint is attached to this notice. It has been filed in the United States District Court for the
(D) _____ District of _____
and has been assigned docket number (E) _____ .

This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the cost of serving you with a judicial summons and an additional copy of the complaint. The cost of service will be avoided if I receive a signed copy of the waiver
within (F) _____ days after the date designated below as the date on which this Notice and Request
is sent. I enclose a stamped and addressed envelope (or other means of cost-free return) for your use. An extra copy of the waiver is also attached for your records.

If you comply with this request and return the signed waiver, it will be filed with the court and no summons will be served on you. The action will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is sent (or before 90 days from that date if your address is not in any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, to the extent authorized by those Rules, ask the court to require you (or the party on whose behalf you are addressed) to pay the full costs of such service. In that connection, please read the statement concerning the duty of parties to waive the service of the summons, which is set forth at the foot of the waiver form.

I affirm that this request is being sent to you on behalf of the plaintiff, this _____ day of
_____ , _____ .

_____
Signature of Plaintiff's Attorney
or Unrepresented Plaintiff

A—Name of individual defendant (or name of officer or agent of corporate defendant)
B—Title, or other relationship of individual to corporate defendant
C—Name of corporate defendant, if any
D—District
E—Docket number of action
F—Addressee must be given at least 30 days (60 days if located in foreign country) in which to return waiver

---

### United States District Court

### District of Colorado

## WAIVER OF SERVICE OF SUMMONS

V.

CASE NUMBER: _____

### NOTICE

TO:

I acknowledge receipt of your request that I waive service of summons in the action of _____
<br>Caption of Action

_____, which is case number _____ in the United States District Court for the District of
<br>Docket Number

Colorado. I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after _____, (date request was sent), or within 90 days after that date if the request was sent outside the United States.

_____   _____
(Date)                             (Signature)

Printed/Typed Name: _____
[as _____ ]
[of _____ ]

---

**Duty to Avoid Unnecessary Costs of Service of Summons**

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

## United States District Court

### District of Colorado

## WAIVER OF SERVICE OF SUMMONS

V.

CASE NUMBER:

## NOTICE

TO:

I acknowledge receipt of your request that I waive service of summons in the action of _____
<br>Caption of Action

_____, which is case number _____ in the United States District Court for the District of
<br>Docket Number

Colorado. I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after _____, (date request was sent), or within 90 days after that date if the request was sent outside the United States.

_____    _____
<br>(Date)                                                     (Signature)

Printed/Typed Name: _____

[as _____ ]

[of _____ ]

### Duty to Avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.