IN THE UNITED STATES DISTRICT

COURT FOR THE DISTRICT OF

COLORADO

Civil Action No. 1:18-cv-00812-MSK-KMT

**FILED**
UNITED STATES DISTRICT COURT
DENVER. COLORADO

**JAN 15 2019**

JEFFREY P. COLWELL
CLERK

JUSTIN MOHN

       Plaintiff,

v.

PROGRESSIVE INSURANCE

Defendant.

---

### PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT

---

**COME NOW** Plaintiff Justin Mohn ("Plaintiff" or "Mohn") who moves for summary

judgment on all of the claims in Civil Action No. 1:18-cv-00812-MSK-KMT pursuant to

Fed. R. Civ. P. 56.

Plaintiff discussed the grounds for this motion and the relief requested with

counsel for the Defendant Progressive Casualty Insurance Company ("Defendant" or

"Progressive") on January 4, 2019. Defendant's counsel opposes the relief requested

herein.

## CLAIMS AND DEFENSES UPON WHICH JUDGMENT IS SOUGHT

### A. Plaintiff is entitled to Summary Judgment on Claim 1: Sex Discrimination

#### 1. Burden of proof and elements

The Plaintiff's claim of sex discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*., requires the Plaintiff to establish, by a preponderance of evidence, a *prima facie* case that: (i) he is male; (ii) he was qualified for the position he held; (iii) he suffered an adverse employment action; and (iv) that adverse action occurred in circumstances giving rise to an inference of discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993).

#### 2. Elements that can be proven by the Plaintiff

#### Elements 1 and 2: Plaintiff establishes he is a male, qualified for the position he held.

A. On the Scheduling Order created by the parties for the above captioned action, the first undisputed fact is that Plaintiff is a male who was hired by Defendant on or about October 24th, 2016. Plaintiff contends that Defendant must believe Plaintiff was qualified for the position he held if Defendant hired him for it, and furthermore, Plaintiff contends he was qualified for the role evident by his performance evaluation as an "outstanding" employee (Progressive 000009-32), his performance metrics (Progressive 0000536 shows Plaintiff was a top performer as early as 2/21/17), and compliments from customers for his customer service.

<u>Element 3: Plaintiff contends that he demonstrates a triable issue of fact as to</u>

<u>whether he suffered an adverse employment action.</u>

A. The Plaintiff stated in his complaint filed on or about April 6th, 2018 for the above captioned action the following events to have been discriminatory: (i) Plaintiff was held back from graduating Progressive's Academy so Plaintiff was paid less than the coworkers in his training class (most of whom were female), could not use benefits such as paid time-off until a later date than his coworkers, and he had a lower priority choice for other job roles and schedules – effectively hurting if not ruining Plaintiff's career, whilst the female coworkers in Plaintiff's training class were allowed to graduate Academy on time, weeks before Plaintiff and the only other male employee in Plaintiff's training class. The evidence for the difference in salaries over time between Plaintiff and his female coworkers is seen in the documents Progressive 0000165-70 produced by Defendant to answer Interrogatory No. 9, and the difference in graduate dates from Academy between males and females is seen in Progressive 0000549 and 0000551 produced by Defendant in response to Request for Production No. 17. (ii) Plaintiff's career was verbally threatened during Progressive's Academy process with performance improvement plans and or other written adverse employment actions for not graduating Academy on time (and graduating last) despite the fact that he was one of the top performers of his training class during Academy and thereafter. Although Plaintiff states Defendant has concealed documents to show the extent and duration to which Plaintiff was a top performer and how many compliments he received from customers, regardless, by producing Progressive 0000536 in response to Request for Production No. 8, Defendant has revealed Plaintiff was a top performer as early as

2/21/17. Plaintiff further states that any communications which would reveal Defendant's intentions to put Plaintiff on a performance improvement plan during Academy were not produced (iii) Plaintiff was denied promotions which would likely have avoided this lawsuit, and in fact, Defendant instead hired an ineligible candidate for one of the roles Plaintiff applied for as there is evidence for in the documents produced by Defendant in response to Requests for Production Nos. 7 and 16 (iv) Plaintiff's work hours were changed to hours he stated would be difficult for him to manage, and although Defendant did not produce documents to show this, Plaintiff states there is sufficient evidence to prove factual Plaintiff's allegations for judgement to be passed so compelling further discovery, sanctions, or subpoenas as well as continuing to trial would be a waste of the Court's time and resources (v) Plaintiff was terminated [even after he flew to Progressive's site in California and offered to transfer there], which Plaintiff alleges was wrongful termination and discriminatory retaliation by Defendant after Plaintiff complained to Defendant's Human Resources. In Defendant's response to Request for Production No. 1, by producing Progressive 0000552, Defendant showed that Plaintiff's initial complaint occurred on 7/28/2017, and in Defendant's response to Request for Production No. 2, in producing Progressive 0000578-579, 0000587, and 0000594-595, Defendant has revealed Plaintiff began trying to resolve this dispute as early as 6/2/2017 via communications Plaintiff initiated with Site Director Charles Baughman in order to avoid lawsuit, yet Plaintiff was terminated by Defendant in August of 2017. In Defendant's response to Request for Production No. 3, Defendant reveals Progressive did not follow their Disciplinary Action guidelines according to Progressive 0000109-110 in regards to any behavior allegations against Plaintiff, and so in addition

to Tamara Marchese terminating Plaintiff for disagreeing with Progressive's Academy and alleged behavior, Plaintiff can only infer that his termination was discriminatory and retaliation by Defendant following his complaint of discrimination, and that Defendant was wrongfully looking to terminate Plaintiff after he complained especially knowing Plaintiff was a top performer.

B. For purposes of this motion, Plaintiff wishes to resolve this case in a manner which the Courts view as justice without wasting the Court's time and resources by compelling discovery, or ordering sanctions, subpoenas, or other actions under D.C.COLO.LCrR 57.1. On October 26th, 2018, Plaintiff requested discovery via certified U.S. Mail and email to counsel for Defendant. In responding to Plaintiff's discovery request, Defendant has provided sufficient evidence to prove factual Plaintiff's claims made in his complaint for the above captioned action to now motion for summary judgement under the legal authority of Title VII of the Civil Rights Act of 1964. Upon requesting discovery, Plaintiff stated to counsel for Defendant: "I am asking that you let me know (when you decide) if you plan to respond in a manner which satisfies discovery so I know if I need to write a Motion for Judgement (Exhibit A)," meaning, depositions and trial should only occur so long as Defendant responds to Plaintiff's discovery requests in a manner which will continue the case, and so although deposition dates were set for both Plaintiff and Defendant, Plaintiff sees no reason to waste the Court's resources for depositions and trial if summary judgement is more efficient and just.

C. The standard for "adverse action" in the 10th Circuit is to be "liberally construed." *Heno v. Sprint/United Mgmt. Co.* 208 F.3d 847, 857 (10th Cir. 2000).

5

Actions which pose no immediate consequence but potentially harm future employment prospects may be adverse actions. *Burlington Industries Inc. v. Ellereth*, 524 U.S. 742, 761 (1998).

D. As stated above in section A, and as will be further illustrated in this motion, Defendant was discriminatorily holding back Plaintiff from graduating Progressive's Academy, despite Plaintiff being an early top performer, which constitutes an adverse action. Plaintiff evidently only graduated from Academy because Plaintiff emailed his supervisor to be, Rebecca Coffey, about Plaintiff's top performance whilst still in Academy - then Plaintiff miraculously graduated that same day, very last of his class, as seen by Defendant's response to Request for Production No. 8 by producing Progressive 0000541-542. However, even though Plaintiff graduated from Academy, he graduated late and last (besides a coworker who hurt her hip), and so as seen by Progressive 0000165-170, Plaintiff was paid less than the majority of the female coworkers in his training class, could not use benefits such as paid time-off until a later date than his coworkers, and he had a lower priority choice for other job roles and schedules – effectively hurting if not ruining Plaintiff's career in a discriminatory manner; only for Plaintiff to be wrongfully terminated about 5 months later.

E. In trying to resolve this dispute to avoid lawsuit after Plaintiff graduated from Academy, since Plaintiff's career was essentially ruined from there on out, Plaintiff applied for other job roles and was denied two promotions by Defendant, Plaintiff was not given the chance to transfer to a site in California even after taking time off to visit there, and Plaintiff had his schedule changed to hours he said would be difficult for him to manage, all of which may constitute adverse actions.

<u>Element 4: The Plaintiff can establish that adverse employment action arose in circumstances giving rise to an inference of discrimination.</u>

A. "Circumstances giving rise to an inference of discrimination" may arise in many contexts. For example, the Plaintiff may show actions or remarks by decisionmakers reflecting discriminatory animus, preferential treatment given to employees outside the protected class, or questionable timing of an employment decision. *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005).

B. The Plaintiff states Defendant's Greg Lofthus and Beverly Auld-Feldman deterred Plaintiff's Academy graduation as occurs to the majority, if not all, of male employees as seen by Defendant's response to Plaintiff's Request for Production No. 17 in producing Progressive 0000549 and Progressive 0000551 - and then Academy Manager Beverly Auld-Feldman threatened Plaintiff with performance improvement plans and or other written adverse employment actions. Even though Plaintiff graduated from Academy, as seen by Progressive 0000165-170, Plaintiff had a lower pay for a longer time than his female coworkers, could not use benefits until a later date than his female coworkers, and had a lower priority choice for other job roles and schedules after Academy. As seen by Progressive 0000536 in Defendant's response to Request for Production No. 8, because Plaintiff was a top performer during Academy and thereafter in his training class of mostly women and only one other man (Eric Foster), Plaintiff can only infer that Defendant attempted to hold Plaintiff back and or terminate him in Academy discriminatorily due to his male gender unless there is another discriminatory reason such as religion/culture which is futile to argue about.

7

C. Because Plaintiff experienced discriminatory conduct during Progressive's Academy process which other men seemed to experience as well, and because Plaintiff was the only party trying to resolve the issue in the months thereafter, Plaintiff can only infer that the denial of his promotions, the changing of his schedule to nonpreferred hours, and his termination were all for the same discriminatory reasons that he was held back from graduating Academy, almost terminated in Academy, and had his career perceivably ruined during Academy regardless of graduating – because of his male gender, or else a different discriminatory reason such as religion/culture which is futile to argue about.

D. Plaintiff recalls Defendant's reasons for terminating him via phone call by Tamara Marchese to be Plaintiff disagreeing with Progressive's Academy process [for which the above captioned action was initiated] and alleged behavior. The reasons which Tamara stated over the phone are different than that which Defendant states in their answer to Plaintiff's Interrogatory Nos. 11, 14, 15, 16, and 17: "based on performance and behavior issues… Plaintiff was terminated from employment." The behavior which Defendant alleges Plaintiff engaged in evidently occurred *after* Defendant had already engaged in discriminatory conduct against Plaintiff and effectively hurt if not ruined Plaintiff's career at Progressive. This behavior which Defendant alleges Plaintiff engaged in evidently occurred *before* Plaintiff complained to Progressive's Human Resources of discrimination, and then this alleged behavior was brought up by Defendant weeks later seemingly only to retaliate against Plaintiff for complaining of discrimination - as if Progressive was ignoring this alleged behavior Plaintiff was never warned about then decided to terminate Plaintiff after Plaintiff

complained of discrimination, which was in violation of their own Disciplinary Action guidelines as seen by Progressive 0000109-110.

According to Progressive's aforementioned Code of Conduct, there are 4 steps of disciplinary action involved in terminating an employee for behavior – Step 1 Verbal warning, Step 2 Written Warning, Step 3 Final Written Warning, and Step 4 Termination. Plaintiff never received a verbal warning, written warning, and or final written warning before Tamara Marchese terminated Plaintiff over the phone for disagreeing with Defendant's Academy process and alleged behavior, and so Plaintiff can only infer that his termination was discriminatory and retaliation for his complaint of discrimination, and that Defendant was wrongfully looking to terminate Plaintiff, especially knowing Plaintiff was a top performer. As seen by Exhibit B, the Hearing Officer for the Colorado Department of Labor and Unemployment concluded that Plaintiff was not at fault for his separation from Progressive, the employer. Plaintiff is entitled to unemployment benefits for separation from Progressive under: 8-73-108 (4) C.R.S.

## Argument

Through discovery which has occurred so far in the above captioned action, Plaintiff has obtained evidence as well as formed objections to Defendant's Responses to Plaintiff's First Requests for Production (Exhibit C) and Defendant's Responses to Plaintiff's First Set of Interrogatories (Exhibit D) such that the obtained evidence would allow for summary judgement whilst the case proceeding according to Plaintiff's objections could unduly delay justice and result in wasting the Court's time and resources by compelling discovery, ordering sanctions, subpoenas, or other actions under D.C.COLO.LCrR 57.1. Plaintiff argues the following evidence obtained in

discovery proves factual Plaintiff's allegations which would allow for a summary judgement. Although not all of Plaintiff's allegations have been proven factual through discovery thus far, Plaintiff contends all the necessary factual issues are settled or so one-sided they need not be tried, for there are no important facts still in dispute.

### A. Specific Objections and Responses to Defendant's Responses to Plaintiff's First Requests for Production

<u>Request for Production No. 1:</u> In Defendant's response to Request for Production No. 1, documents Progressive 0000001-0000039 have little if anything to do with grievances, human resources investigations, charges or complaints related to this case. Plaintiff can only infer from this response that Defendant did not conduct a legitimate investigation and instead wrongfully terminated Plaintiff. Additionally, in producing Progressive 0000784, it can be seen that Plaintiff was the only party trying to resolve this issue by initiating discussions with his supervisor about visiting Progressive's Sacramento, Ca site on 6/28/17 as well as discussing new job role(s) on 7/24/17 with his supervisor. Plaintiff then used his own resources to visit this Progressive site in California and he applied for new job roles within Progressive. By Producing Progressive, 0000552 Defendant showed Plaintiff's initial complaint occurred on 7/28/2017 in which Plaintiff still offered solutions to this dispute to avoid lawsuit. Therefore, events which transpired after Plaintiff's attempts to resolve this dispute internally can only be inferred as retaliatory such as denying Plaintiff's schedule choices to force Plaintiff into less preferred schedules, denying Plaintiff's promotion(s), Defendant not initiating Plaintiff's transfer to California's site, and Plaintiff's subsequent termination.

**Request for Production No. 2:** Plaintiff objects to Defendant's response to this request on the basis that Defendant inadequately responded to this request for production to the extent that there are many more communications, specifically email communications between Plaintiff, Greg Lofthus, and other supervisors/managers of Defendant which show Plaintiff's performance metrics as an early and consistent top performer; while Defendant "padded" their response with less relevant communications in a manner which seems as though Defendant is trying to tell only one side of the story, if not an entirely different story. On this basis, Plaintiff objects to Defendant's response such that the Courts may consider compelling discovery to Plaintiff's Request for Production No. 2 if the Motion for Summary Judgement is not granted. Plaintiff further responds to Defendant's response to Plaintiff's Request for Production No. 2 as below by offering Plaintiff's analysis of the 250 or so documents which were provided in Defendant's response just for this request for production.

In producing Progressive 0000565, Defendant has revealed that even after Plaintiff graduated Academy in which alleged discriminatory actions occurred and Beverly Auld-Feldman was Plaintiff's manager who threatened Plaintiff's career with performance improvement plans and possible termination, Defendant then promoted Beverly Auld-Feldman to be Plaintiff's new manager in Plaintiff's new department. In producing Progressive 0000578-579, 0000587, and 0000594-595, Defendant has revealed Plaintiff began trying to resolve this dispute as early as 6/2/2017 via communications Plaintiff initiated with Site Director Charles Baughman to avoid this lawsuit. Progressive 0000619-627, 669-675, 733, 764-765 show that no matter how well Plaintiff got along with his supervisor Rebecca Coffey and their team, and how much we

were able to joke yet resolve issues through our communications, there was evidently nothing Ms. Coffey or Plaintiff could do to remedy the issue of discrimination which had occurred before Ms. Coffey was Plaintiff's supervisor, and the retaliation which occurred after Plaintiff complained of discrimination. Although Plaintiff was an early top performer by 2/21/2017 as seen by Progressive 0000749, Plaintiff states that other performance evaluations sent by email were concealed by Defendant to hide the duration and extent to which Plaintiff was a top performer.

**Request for Production No. 3:** In their response to this request, Defendant reveals they did not follow their Code of Business Conduct and Ethics according to Progressive 0000050-56 in regards to the allegations which led to this lawsuit, in fact, it seems Defendant did the opposite of that which is written in this Code of Business Conduct and Ethics, titled "The Progressive Way." After Defendant engaged in discriminatory conduct, Progressive did not follow their Disciplinary Action guidelines according to Progressive 0000109-110 in regards to any allegations of behavioral issues with Plaintiff. According to this Code of Conduct, there are 4 steps of disciplinary action involved in terminating an employee for behavior – Step 1 Verbal warning, Step 2 Written Warning, Step 3 Final Written Warning, and Step 4 Termination. Plaintiff never received a verbal warning, written warning, and or final written warning before Tamara Marchese terminated Plaintiff for disagreeing with the Academy Process and alleged behavior, and so Plaintiff can only infer that his termination was discriminatory and retaliation following his complaint of discrimination, and that Defendant was wrongfully looking to terminate Plaintiff especially knowing Plaintiff was a top performer.

**Request for Production No. 4:** In refusing to produce documents for this request, it is likely Defendant is concealing that there are handbooks or manuals for coaches, managers, human resource representatives, and supervisors such as Greg Lofthus, Beverly Auld-Feldman and Jim Lawson available, but Defendant refuses to produce these documents because it will show that these individuals did not follow procedures properly, and instead Defendant acted in a discriminatory and retaliatory manner towards Plaintiff. On this basis, Plaintiff objects to Defendant's response such that the Courts may consider compelling discovery to Plaintiff's Request for Production No. 4 if the Motion for Summary Judgement is not granted.

**Request for Production No. 6:** Please see Plaintiff's response and objections to Defendant's response to Plaintiff's Request for Production No. 3.

**Request for Production No. 8:** Plaintiff objects to Defendant's response to this request on the basis that Defendant inadequately responded to this request for production. Although Defendant produced Progressive 0000536 to show Plaintiff was a top performer as early as 2/21/17 and continued to be until at least 7/18/17 as shown by Progressive 0000529, Plaintiff states that many other performance evaluations sent by email were concealed by Defendant likely to hide the duration and extent to which Plaintiff was a top performer at Progressive. These emails would mainly have come from Greg Lofthus, Rebecca Coffey, or other supervisors/managers. Defendant also did not produce any of Plaintiff's compliments from customers for his customer service, for which he likely received more than any other employee in his department during the time he was employed at Progressive. On this basis, Plaintiff objects to Defendant's

response such that the Courts may consider compelling discovery to Plaintiff's Request for Production No. 8 if the Motion for Summary Judgement is not granted.

Furthermore, in producing Progressive 0000541, Defendant has shown Defendant likely would not have even graduated Plaintiff from Academy had Plaintiff not made his supervisor-to-be, Rebecca Coffey, aware of Plaintiff's notable performance whilst still in Academy; for Beverly Auld-Feldman would likely have continued to use her discretion to put Plaintiff on a performance improvement plan then terminate Plaintiff discriminatorily. Progressive 0000542 shows Plaintiff did indeed graduate on 3/7/17 and so it seems Defendant tampered with evidence to backdate Plaintiff's graduation date to 3/4/17 on Progressive 0000551 (which was produced in response to Plaintiff's Request to Production No. 17).

**Request for Production No. 9:** Plaintiff objects to Defendant's response to this request to the extent that by refusing to produce any documents to this request for production (No. 9), and by failing to adequately produce documents for Plaintiff's Request for Production No. 8, Defendant is not only concealing the extent and duration to which Plaintiff was a top performer, but also, Defendant is concealing the documents which would allow a comparison between Plaintiff and his coworkers in the same job role. On this basis, Plaintiff objects to Defendant's response such that the Courts may consider compelling discovery to Plaintiff's Request for Production No. 9 if the Motion for Summary Judgement is not granted.

**Request for Production No. 10:** In Defendant's response to this Request for Production, Defendant confirms that they have no documentation which follows their Disciplinary Action guidelines for alleged behavior issues with Plaintiff, and so Plaintiff's

termination can only be inferred as discriminatory. Furthermore, Defendant conceals any communications in regards to the performance improvement plan which Beverly Auld-Feldman threatened Plaintiff's career with during Academy. On this basis, Plaintiff objects to Defendant's response such that the Courts may consider compelling discovery to Plaintiff's Request for Production No. 10 if the Motion for Summary Judgement is not granted.

**Request for Production No. 11:** Similar to Defendant's inadequate response to Plaintiff's Request for Production No. 9, Defendant once again does not produce documents which would allow for a comparison between Plaintiff and Plaintiff's coworkers in the same job role. On this basis, Plaintiff objects to Defendant's response such that the Courts may consider compelling discovery to Plaintiff's Request for Production No. 11 if the Motion for Summary Judgement is not granted.

**Request for Production No. 12:** In producing Progressive 0000171-172, Defendant has produced any and all documents to show there was no job duty and or responsibility that Plaintiff failed to prequalify for or accomplish on the job, and so Plaintiff can only infer his negative experiences which constitute adverse actions and his termination were for discriminatory reasons.

**Request for Production No. 13:** Although Defendant alleges several privileges to avoid producing the documents requested, Plaintiff states that Defendant's responses to Plaintiff's Interrogatories Nos. 1-3 in which Defendant names many new individuals in this action confirms that Defendant is trying to pad their defense while trying to avoid giving Plaintiff any names of individuals, communications, or documents which refer or relate to witnesses or potential witnesses whom Defendant intends to call at trial. On

this basis, Plaintiff objects to Defendant's response such that the Courts may consider

compelling discovery to Plaintiff's Request for Production No. 13 if the Motion for

Summary Judgement is not granted.

**Request for Production No. 14:** In refusing to produce documents to this

request, Plaintiff alleges that Defendant's most powerful tool for discriminatorily starting,

orchestrating, and fighting cases such as this action is being hidden – that being the tool

of communication. It is likely that any remaining mysteries to this case in the eye of the

Courts would be revealed by Defendant producing such documents requested herein,

and so Plaintiff sees Defendant's objection that this request is "overbroad and unduly

burdensome" as a confirmation that there are such documents in existence. If there

were no such documents, Defendant should have said there are no such documents,

however, Defendant is instead implying that there are too many documents in existence

which reveal communications between Progressive employees about Plaintiff, likely

informal and slandering, that Defendant is concealing such communications. On this

basis, Plaintiff objects to Defendant's response such that the Courts may consider

compelling discovery to Plaintiff's Request for Production No. 14 if the Motion for

Summary Judgement is not granted.

**Request for Production No. 15:** Defendant likely did not respond to this request

for production for the same reason Defendant did not respond to Plaintiff's Interrogatory

No. 4 - to try to conceal that discrimination, hostile work environment, and employment

tort cases have arisen in the past with Defendant in a manner which reveals a pattern or

trend, especially knowing this action could have evolved into a class action suit had

Plaintiff attempted to do so before the Deadline for Amendment to Pleadings and

Joinder of Parties. Plaintiff states he did not request production of such documents to

fish for "me too" evidence as alleged by Defendant. On this basis, Plaintiff objects to

Defendant's response such that the Courts may consider compelling discovery to

Plaintiff's Request for Production No. 15 if the Motion for Summary Judgement is not

granted.

**Request for Production No. 16:** In producing documents to this request,

Defendant has revealed the candidate Defendant chose for the Copywriter position

which Plaintiff applied for to resolve this dispute internally was an ineligible candidate

whose greatest writing achievement she listed was writing the "Sprinkles are for

Winners," Progressive children's book, which Plaintiff could not find and verify as a

published work using the internet, although Plaintiff states he found three, short

published children's books by the same author which were not listed on her resume

submitted (Progressive 0000354). At the time of Plaintiff's application, he was a current

Progressive employee and had successfully written and published two full-length books,

one non-fiction, and one fiction, and has since published a third fiction book. To be

eligible for this role, Progressive states in Progressive 0000545 that this position is for

internal candidates only and so the candidate Defendant hired was simply ineligible for

the role since this candidate was external to Progressive, working as a freelance

copywriter from 2009 onward according to her resume. Furthermore, Plaintiff suspects

Defendant produced documents for a backdated new hire into a similar job positing and

didn't even fill the specific position which Plaintiff applied for and which would have

resolved this dispute, since Plaintiff applied for the Copywriter role in July of 2017 and

Progressive 0000356 reveals the start date of the employee they hired instead as February 13, 2017.

In refusing to produce documents which reveal the career paths of individuals in Plaintiff's training class, Defendant is concealing that female coworkers such as Donna and Natasha began training to transfer to different roles in the weeks before Plaintiff's termination, and so Plaintiff can only infer that by Defendant not reciprocating with Plaintiff's attempts at obtaining another job role to avoid this lawsuit while females in his training class did obtain other job roles, Plaintiff experienced gender discrimination, retaliation, and wrongful termination. On this basis, Plaintiff objects to Defendant's response such that the Courts may consider compelling discovery to Plaintiff's Request for Production No. 16 if the Motion for Summary Judgement is not granted.

**Request for Production No. 17:** In producing documents for this request, Defendant has revealed Progressive's Academy shows a pattern which may be seen as systematic gender discrimination against men, including Plaintiff. According to Progressive 0000549, of the 16 individuals coached by Greg Lofthus since 2015, 5 were male and 11 were female. Of those 5 men, including Plaintiff, the number of weeks it took for Academy graduation were as followed: 14 weeks, 13 weeks, 14 weeks, 14 weeks, and 13 weeks – the average graduation time being 13.6 weeks for men. Of those 11 females coached by Greg, the number of weeks it took for graduation were as followed: 11, 11, 14, 9, 8, 13, 9, 11, 13, 11, 8 – the average graduation time being 10.73 weeks for women. So, in addition to Defendant evidently hiring a greater ratio of females to men, the females spend about 3 weeks less in Academy then men. When we consider the additional fact that Academy managers such as Beverly Auld-Feldman

then threaten men such as Plaintiff with performance improvement plans for coaches such as Greg not graduating male employees on time, Plaintiff can only infer discrimination.

As shown by Progressive 0000551, this trend of men graduating from Academy noticeably later than females continued with Plaintiff's training class (not counting Daniel Rogers who was a previous employee and was put on a different track then the rest of Plaintiff's class), such that the two male employees including Plaintiff took 13 weeks to graduate and the 7 females took the following times to graduate: 10, 10, 10, 10, 12, 11, and 16 (knowing Angela hurt her hip which contributed to her taking 16 weeks) – the average graduation time being 11.28 weeks even including Angela's time.

Furthermore, the trend which continued from 2015 to 2017 with Plaintiff's training class shows that Greg Lofthus does not have a history of bullying so much as Progressive's Academy systematically discriminates against most, if not all men while favoring women. Lastly, it looks like Defendant backdated the effective date of Plaintiff's graduation to 3/4/17, for Progressive 0000541 reveals Plaintiff sent an email on 3/7/17 while still in Academy to both Beverly Auld-Feldman and his supervisor-to-be, Rebecca Coffey, to make Rebecca aware of Plaintiff's contributions to the company so as to not allow Beverly Auld-Feldman to use her discretion to put Plaintiff on a performance improvement plan then terminate Plaintiff discriminatorily. Progressive 0000542 shows Plaintiff did indeed graduate on 3/7/17 and so it seems Defendant tampered with evidence to backdate Plaintiff's graduation date to 3/4/17 on Progressive 0000551.

**Request for Production No. 18:** In Defendant's response stating they were "unable to locate any recording matching the description of this request," Plaintiff states

Defendant has failed to preserve electronically stored information, or rather, Defendant is concealing documents for their defense. Plaintiff provided what may be seen as more accurate than a reference point to locate this phone call, Plaintiff provided what may be seen as an exact point in time to locate this phone call. This phone call which Plaintiff requested reveals the extent to which Plaintiff was willing to go for Progressive customers, while also revealing the unethical nature of Defendant's business operations in trying to wrongfully force their own customers into homelessness for profit.

In short, Plaintiff believes Defendant located this ESI, but concealed producing this document because it not only shows how good of an employee Plaintiff was and what kind of moral character he has, but this document is disturbing and offensive to listen to or read a transcript of.  Because Plaintiff was the kind of employee who would go to the lengths he did for this customer, and because he is not aware of any of his coworkers who have or would go to such lengths, then he can only infer his negative experiences which constitute adverse actions and his termination as discrimination for his gender or else another discriminatory reason which is futile to argue about. On this basis, Plaintiff objects to Defendant's response such that the Courts may consider compelling discovery to Plaintiff's Request for Production No. 18 if the Motion for Summary Judgement is not granted.

**Request for Production No. 19:** In Defendant's response to this request, by producing documents to show only employees in Plaintiff's training class instead of the entire Colorado Springs site as Plaintiff requested, Defendant has concealed documents to effectively narrow the scope of this issue of gender discrimination to one department which Plaintiff suspects is wide spread as part of Progressive's company

culture. On this basis, Plaintiff objects to Defendant's response such that the Courts may consider compelling discovery to Plaintiff's Request for Production No. 19 if the Motion for Summary Judgement is not granted.

**Request for Production No. 20:** In their response, Defendant has seemingly used a loophole to avoid producing documents for this request by objecting to the request "to the extent that it requires Defendant to create documents not in existence." Defendant is alluding to the notion that because there is no known picture of Greg's dog tattoo in existence, then Defendant should not have to take a picture of the tattoo to be produced for this request. To paraphrase, Plaintiff's supervisor, Rebecca Coffey, told Plaintiff "nobody goes anywhere at Progressive unless they fit in with the company's culture." This statement may be seen as an inference of culture/religion discrimination, however, Plaintiff states that if culture/religion discrimination has occurred, it occurred under circumstances of gender discrimination such that there is sufficient evidence to prove factual Plaintiff's allegations and so it is futile to argue about what protected class Plaintiff falls under in this scenario. Simply put, a tattoo can be the symbol of one who is indoctrinated into a cult or other religious organization.

According to The Holy Bible (KJV) Revelation 13: 15-17 (Exhibit E), there is a prediction of people who are presumably part of a religious cult receiving markings in order to be allowed to do business and live, also known as the Mark of the Beast: "(15) And he had power to give life unto the image of the beast, that the image of the beast should both speak, and cause that as many as would not worship the image of the beast should be killed. (16) And he causeth all, both small and great, rich and poor, free and bond, to receive a mark in their right hand, or in their foreheads: (17) And that no

man might buy or sell, save he that had the mark, or the name of the beast, or the number of his name."

On this basis, Plaintiff objects to Defendant's response such that the Courts may consider compelling discovery to Plaintiff's Request for Production No. 20 if the Motion for Summary Judgement is not granted.

**Request for Production No. 21:** Plaintiff hereby incorporates his response and objections to Defendant's response to Request for Production No. 20. On this basis, Plaintiff objects to Defendant's response such that the Courts may consider compelling discovery to Plaintiff's Request for Production No. 21 if the Motion for Summary Judgement is not granted.

**Request for Production No. 22:** In responding to Plaintiff's corresponding Interrogatory No. 22, Defendant states they asked several employees about the events described by Plaintiff in this request for production, yet Defendant evidently did not ask an employee of Progressive named Michael Kutch who is friends with Plaintiff's family. Plaintiff hereby incorporates his response and objections to Defendant's response to Plaintiff's Interrogatory No. 22. On this basis, Plaintiff objects to Defendant's answer such that the Courts may consider compelling discovery to Plaintiff's Request for Production No. 22 if the Motion for Summary Judgement is not granted.

### B. Specific Objections and Responses to Defendant's Responses to Plaintiff's First Set of Interrogatories

**Interrogatory No. 1:** In Defendant's answer to Plaintiff's Interrogatory No. 1, seven of the 12 individuals (not including Plaintiff) identified by Defendant are "new

names" in this case so to speak whose roles have yet to be identified to Plaintiff in this action, making it seem as though Defendant is artificially "padding" their defense in an illusory manner using their large employee base. Plaintiff states that many more employees of Progressive likely know facts about this case because they witnessed that which Plaintiff complained of in this case, and may have also experienced discrimination themselves, and so there are likely many names that should be added to Defendant's answer to Interrogatory 1. On this basis, Plaintiff objects to Defendant's answer such that the Courts may consider compelling discovery to Plaintiff's Interrogatory No. 1 if the Motion for Summary Judgement is not granted.

**Interrogatory No. 2:** In answering this interrogatory with "please see Defendant's Answer to Interrogatory No. 1, Defendant is stating that they evidently communicated details about this case only with other employees of Defendant who they could use to artificially pad their defense as Plaintiff described in his objection to Defendant's Answer to Interrogatory No. 1. Plaintiff states that many more employees of Progressive likely know facts about this case and so they likely were involved in communications about this case because they witnessed that which Plaintiff complained of in this case, and so there are likely many names that should be added to Defendant's answers to Interrogatory Nos. 1 and 2. On this basis, Plaintiff objects to Defendant's answer such that the Courts may consider compelling discovery to Plaintiff's Interrogatory No. 2 if the Motion for Summary Judgement is not granted.

**Interrogatory No. 3:** – Defendant did not identify any witnesses they intend to call at trial despite the fact that Defendant identified seven "new" people unknown to Plaintiff in Defendant's answer to Interrogatory No. 1, which seemingly contradicts and

should therefore nullify Defendant's objection that Plaintiff's Interrogatory No. 3 is

premature. On this basis, Plaintiff objects to Defendant's answer such that the Courts

may consider compelling discovery to Plaintiff's Interrogatory No. 3 if the Motion for

Summary Judgement is not granted.

**Interrogatory No. 4:** - Defendant did not answer this interrogatory likely to try to

conceal that discrimination, hostile work environment, and employment tort cases have

arisen in the past with Defendant in a manner which reveals a pattern or trend,

especially knowing this action could have evolved into a class action suit had Plaintiff

attempted to do so before the Deadline for Amendment to Pleadings and Joinder of

Parties. Plaintiff states he did not ask this interrogatory to fish for "me too" evidence as

alleged by Defendant. On this basis, Plaintiff objects to Defendant's answer such that

the Courts may consider compelling discovery to Plaintiff's Interrogatory No. 4 if the

Motion for Summary Judgement is not granted.

**Interrogatory No. 5:** Defendant did not answer this interrogatory likely to

conceal that this lawsuit could have been avoided through inhouse resolution as

proposed by Plaintiff several times such as by Plaintiff transferring to Progressive's site

in California or obtaining a new job role; as well as to conceal the Defendant's method

of handling this dispute prior to the service of this complaint. On this basis, Plaintiff

objects to Defendant's answer such that the Courts may consider compelling discovery

to Plaintiff's Interrogatory No. 5 if the Motion for Summary Judgement is not granted.

**Interrogatory No. 6:** Defendant did not describe what, if any, investigative

actions or anti-retaliation measures were taken, Defendant only listed names of

individuals supposedly involved in investigations and anti-retaliation measures, yet

24

Defendant has shown they did not follow their own Disciplinary action guidelines in terminating Plaintiff, and so Plaintiff can only infer that his termination was indeed discriminatory and retaliatory. On this basis, Plaintiff objects to Defendant's answer such that the Courts may consider compelling discovery to Plaintiff's Interrogatory No. 6 if the Motion for Summary Judgement is not granted.

**Interrogatory No. 7:** Similar to Defendant's answer to Plaintiff's previous interrogatory (No. 6), Defendant only listed individuals' names in their answer to this interrogatory, and no actions by those individuals were described. Once again, this is likely an attempt by Defendant to conceal the discriminatory conduct Defendant engaged in against Plaintiff as well as the failure of Defendant's human resource investigation, anti-retaliation measures, and general response to the concerns which Plaintiff raised with Defendant's human resources department. On this basis, Plaintiff objects to Defendant's answer such that the Courts may consider compelling discovery to Plaintiff's Interrogatory No. 7 if the Motion for Summary Judgement is not granted.

**Interrogatory No. 8:** Although Defendant produced a lavish list of courses and trainings for each of the employees whom Plaintiff inquired about in this interrogatory, Defendant did not describe or highlight any specific courses or trainings which refer or relate to the prevention of employment discrimination/harassment, torts, retaliation, and related complaint procedures. On this basis, Plaintiff objects to Defendant's answer such that the Courts may consider compelling discovery to Plaintiff's Interrogatory No. 8 if the Motion for Summary Judgement is not granted. Plaintiff further responds to Defendant's answer to Plaintiff's Interrogatory No. 8 as below by offering Plaintiff's

analysis of the 150 or so documents which were provided in Defendant's answer just for this interrogatory.

Progressive 0000364 seems to reveal the most recent training session was cancelled for Tamara Marchese's CRM Customer Care department, of which Plaintiff was employed under, although no date is listed for this.

Progressive 0000395 seems to reveal Progressive Site Director Charlie Baughman's most recent Compliance training before this lawsuit was on 6/6/2011, and he only recently had training of the same category called PCI Acknowledgement on 9/4/2018, although Plaintiff acknowledges Baughman did have other trainings in between these dates according to Progressive 0000402-433. Similarly, Progressive 0000434 seems to reveal Plaintiff's supervisor, Rebecca Coffey's most recent Compliance training before this suit arose was on 6/24/2011, and she only recently had training of the same category called PCI Acknowledgement on 8/31/2018, although Plaintiff acknowledges Coffey did have other trainings in between these dates according to Progressive 0000435-453. Progressive 0000454, 0000465, 0000480 show that Jim Lawson, Greg Lofthus, and Tamara Marchese respectively, began taking courses called "Right Way Every Day," in the second half of 2017 which ended in the second half of 2018 for them, culminating in a Code of Conduct and Felony Disclosure training, corresponding to the timeframe of this lawsuit such that one may suspect these courses were given to employees of Defendant in preparation to answer such an interrogatory, although Plaintiff admits this timing could be pure coincidence. Lastly, Progressive 0000512 has nothing to do with Interrogatory No. 8 and Plaintiff is confused why this was produced in the answer.

**Interrogatory No. 9:** In producing Progressive 0000165-70 to answer this interrogatory, Defendant has not only shown that both Plaintiff and the only other male employee (Eric Foster) in Plaintiff's training class graduated last from Progressive's Academy (besides Angela who hurt her hip), but that Plaintiff had a starting pay of less than several other females and he was paid less over time by graduating Academy later despite being a top performer. Plaintiff acknowledges there was one other male employee in his training class named Daniel Rogers, but since Daniel was a previous employee, he was on a separate track from the rest of the training class and he was separated from us before the rest of us even began Academy, and so Plaintiff does not count him in this analysis.

As seen in Progressive 0000165-70, which lists the salaries of Plaintiff's training class coworkers, in chronological order going by each employee's graduation date (as seen also by Progressive 0000551 which was produced by Defendant in response to Request for Production No. 17) corresponding to the 4th pay raise given to each employee, Natasha, Elizabeth Lopp, and Terri graduated 2/11/2017, Yvette, Elizabeth Wixon, and Donna graduated 2/25/2017, Eric graduated 3/4/2017, and Plaintiff graduated 3/7/2017. It appears as though Defendant backdated the effective date of Plaintiff's Academy graduation to 3/4/17 on Progressive 0000551, for Progressive 0000541 reveals Plaintiff sent an email on 3/7/17 while still in Academy to both Beverly Auld-Feldman and his supervisor-to-be, Rebecca Coffey, to make Rebecca aware of Plaintiff's stellar performance so as to not allow Beverly Auld-Feldman to use her discretion to put Plaintiff on a performance improvement plan then terminate Plaintiff discriminatorily. Progressive 0000542 shows Plaintiff did indeed graduate on 3/7/17 and

so it seems Defendant tampered with evidence to backdate Plaintiff's graduation date to 3/4/17 on Progressive 0000551. Progressive 0000165-70 supports Plaintiff's contention that Defendant backdated Plaintiff's Academy graduation date for the purpose of their defense by revealing Plaintiff's salary change did not go into effect until 3/12/17 – one full week after Eric Foster's salary change for graduating Academy. The only female who graduated Academy after Plaintiff was Angela on 3/24/17 which Plaintiff contends is likely only because she injured her hip. Abigail evidently did not want to or was not able to continue the job during Academy. When we consider the fact that Plaintiff was the top performer of his training class and the highest educated of his class with a B.S. degree, Plaintiff can only infer discrimination by graduating last, after Eric, the only other male employee in the training class.

As later demonstrated by Plaintiff's performance on the job, Plaintiff further contends his starting salary of $16 / hour given his experience, education, and qualifications was relatively low in comparison to the starting salary given to his female coworkers for their relative experience, education, and qualifications, several of whom started out being paid higher than Plaintiff such as Terri at $16.25 / hour, Yvette at $16.50 / hour, and Elizabeth Lopp at $16.50 / hour. In addition to the aforementioned females starting out with a higher pay, they were given their raises sooner upon graduation from Academy, and then they were allowed to use benefits sooner such as Paid Time Off and preferential scheduling selecting as seen by Progressive 0000787-788

**Interrogatory No. 11:** In answering this interrogatory, Defendant does not dispute that Plaintiff was discriminated against at Progressive, retaliated against, denied

28

a promotion, a victim of sex-based pay discrimination, and or wrongfully terminated. This interrogatory was a chance for Defendant to dispute Plaintiff's allegations as factual or not, however, by refusing to respond to this interrogatory, Defendant is also not disputing that which Plaintiff alleges as fact - that being discrimination and retaliation by Defendant. Plaintiff states that in addition to the sufficient evidence to prove factual the allegations made in Plaintiff's Complaint for the above-captioned action, there are no factual issues remaining to be tried which would not waste the Court's time and resources at trial for there are no important facts still in dispute, and the Plaintiff is entitled to summary judgment on any and all claims.

**Interrogatory No. 12:** As in Defendant's answer to Interrogatory No. 11, in answering this interrogatory, Defendant does not dispute that Plaintiff was subjected to tortious conduct at Progressive and that Plaintiff suffered severe emotional distress from said conduct.

**Interrogatory No. 13:** In Defendant's answer to this interrogatory, as in their answer to the two previous interrogatories, Defendant once again does not dispute that which Plaintiff alleges as factual in the above captioned action.

**Interrogatory No. 14:** In Defendant's answer to this interrogatory, Defendant states Plaintiff was fired "based on performance and behavior issues," although Plaintiff contends he was a top performer as early as 2/21/17 as seen by Progressive 0000749, and Tamara Marchese alternatively stated the reasons for Plaintiff's termination were due to Plaintiff disagreeing with the Academy process and alleged behavior. This suit has been brought about due to the disagreement between the parties with Progressive's Academy process and the events thereafter, and Plaintiff contends any allegations of

Plaintiff's behavior are discriminatory and retaliatory due to Plaintiff previously complaining of discrimination, and that his termination was wrongful, even in violation of Defendant's own Disciplinary Action guidelines as seen by Progressive 0000109-110. The Hearing Officer for the Colorado Department of Labor and Unemployment concluded that Plaintiff was not at fault for his separation from Progressive, the employer. Plaintiff is entitled to unemployment benefits for separation from Progressive under: 8-73-108 (4) C.R.S. (Exhibit B).

**Interrogatory No. 15:** As in Defendant's answer to Interrogatory No. 14, Defendant provides a generic, not-at-fault statement, although nowhere in Defendant's answer to this interrogatory does Defendant explicitly or implicitly state that there are any facts still in dispute which would not be in contradiction to the evidence gathered so far during discovery to prove factual Plaintiff's allegations. Plaintiff states that in addition to the sufficient evidence to prove factual the allegations made in Plaintiff's Complaint for the above-captioned action, there are no factual issues remaining to be tried which would not waste the Court's time and resources at trial, and the Plaintiff is entitled to summary judgment on any and all claims.

**Interrogatory No. 16:** As in Defendant's previous answers to Plaintiff's interrogatories, again, Defendant does not explicitly or implicitly state that there are any facts still in dispute which would not be in contradiction to the evidence gathered so far during discovery.

**Interrogatory No. 17:** As in Defendant's previous answers, in their answer to this interrogatory, Defendant does not explicitly or implicitly state that there are any facts

still in dispute which would not be in contradiction to the evidence gathered so far during discovery to prove factual Plaintiff's allegations.

**Interrogatory No. 18:** In answering this interrogatory, Defendant once again does not explicitly or implicitly state that there are any facts still in dispute which would not be in contradiction to the evidence gathered so far during discovery to prove factual Plaintiff's allegations, and furthermore, Defendant inadequately responded to this interrogatory by not specifying which [bates label] documents or responses to requests for documents Nos. would sufficiently answer this interrogatory despite Plaintiff's instructions to do so. Plaintiff's Instructions (11) written in Plaintiff's First Set of Interrogatories were: "if an answer to an interrogatory refers or relates to a request for production in Plaintiff's First Set of Requests for Production, please identify the number of the request for production and or identify the produced document which refers or relates to the answer if not already explicitly stated in the interrogatory." Plaintiff objects to Defendant's answer to this interrogatory to the extent that not following the instructions can be misleading if not evasive.

**Interrogatory No. 19:** By refusing to answer this interrogatory, Defendant is likely concealing that their defense has revolved mainly around fighting Plaintiff financially rather than through what the Court sees as justice for the allegations in this lawsuit.

**Interrogatory No. 20:** By not answering this interrogatory, Defendant is concealing possible evidence of cultural/religion discrimination, and Plaintiff further contends Defendant has found a loophole in answering this interrogatory by not producing documents to the corresponding Request for Production No. 20. In Defendant

objecting to create documents not in existence, they are refusing to simply take a picture which could serve as evidence. Plaintiff states that this interrogatory and corresponding request for production may be very relevant if there is indeed a cult or religious organization who operate through gender discrimination at Progressive as complained of in this case. While Plaintiff maintains gender discrimination has occurred, Plaintiff has suspicions that a well-organized group of individuals who are part of a cult or religious organization could be employed at Progressive and other institutions, systematically committing gender discrimination as part of their business operations, meaning, there could have been cultural or religious discrimination occurring in addition to gender discrimination.

On this basis, Plaintiff objects to Defendant's answer such that the Courts may consider compelling discovery to Plaintiff's Interrogatory No. 20 if the Motion for Summary Judgement is not granted.

**Interrogatory No. 21:** The Defendant is seemingly not answering this interrogatory for the same reason(s) as they did not answer Plaintiff's Interrogatory No. 20. Plaintiff hereby incorporates his response and objections to Defendant's Answer to Plaintiff's Interrogatory No. 20. On this basis, Plaintiff objects to Defendant's answer such that the Courts may consider compelling discovery to Plaintiff's Interrogatory No. 21 if the Motion for Summary Judgement is not granted.

**Interrogatory No. 22:** Although Defendant states they asked several employees about the events described by Plaintiff in this interrogatory, Defendant evidently did not ask an employee of Defendant named Michael Kutch who is friends with Plaintiff's family. On this basis, Plaintiff objects to Defendant's answer such that the Courts may

consider compelling discovery to Plaintiff's Interrogatory No. 22 if the Motion for Summary Judgement is not granted.

**Interrogatory No. 23:** The Defendant is seemingly not answering this interrogatory for the same reason(s) as they did not answer Plaintiff's Interrogatory Nos. 20 and 21. Plaintiff hereby incorporates his response and objections to Defendant's Answer to Plaintiff's Interrogatory No. 20. On this basis, Plaintiff objects to Defendant's answer such that the Courts may consider compelling discovery to Plaintiff's Interrogatory No. 23 if the Motion for Summary Judgement is not granted.

**Interrogatory No. 25:** By not answering this interrogatory, Defendant is likely concealing that their role in the economy when it comes to labor and employment is not an amicable or noble role in society. Many private companies would easily be able to answer this interrogatory by boasting that their company's role in America's economy is to stimulate job growth and keep unemployment rates down while providing their products and services for a profit.

**Defendant's Verification:** Defendant added a "Verification" page (last page of Exhibit D) in which Progressive Human Resources Representative Jim Lawson signed and had notarized a statement that he reviewed and verified Defendant's Response to Plaintiff's First Set of Interrogatories, yet there is no similar review and verification for Defendants' Response to Plaintiff's First Requests for Production (Exhibit C) by Jim Lawson, or any Progressive employee for that matter. Plaintiff suspects this has something to do with documents labeled Progressive 0000553-0000554, which are included in Defendant's thumb drive produced for discovery, but these specific documents are not referenced in either the Defendant's Response to Plaintiff's First

Requests for Production or Defendant's Response to Plaintiff's First Set of Interrogatories. Progressive 0000553-0000554 shows a conversation between Plaintiff and Jim Lawson, who failed to remedy the dispute between the parties and instead forced the situation to escalate to a lawsuit. Plaintiff suspects this is why there is no similar "Verification," page for Defendant's Response to Plaintiff's First Requests for Production.

## CONCLUSION

The Defendant's responses to Plaintiff's request for discovery thus far provides Plaintiff and the Courts with sufficient evidence to prove factual the allegations made in Plaintiff's Complaint for the above-captioned action, and there are no factual issues remaining to be tried which would not place the burden on the Courts of compelling discovery, ordering sanctions, subpoenas, or other actions as well as waste the Court's time and resources at trial, and so the Plaintiff is entitled to summary judgment on any and all claims. Although not all of Plaintiff's allegations have been proven factual through discovery thus far, Plaintiff contends all the necessary factual issues are settled or so one-sided they need not be tried, for there are no important facts still in dispute. In addition, Plaintiff believes the evidence discovered so far along with Defendant's lack of producing all of Plaintiff's discovery requests indicates that the Defendant has not proven their affirmative defense, and so they should not be entitled to a cross motion for summary judgement on that defense.

Date: 1 / 1 4 / 19

Respectfully submitted:

*Justin Mohn*

Justin Mohn

1625 E Woodmen Rd Apt 49

Colorado Springs, CO 80920

719-432-8416

*Plaintiff, Pro Se*

## CERTIFICATE OF SERVICE

By my signature below, I, Justin Mohn, certify that a true and correct copy of the above

and foregoing document has been forwarded via e-mail and U.S. mail to the following

(counsel for defendant(s)) on this $\underline{14}$ day of January 2019:


Margaret Parnell Hogan

Littler Mendelson, P.C.

1900 Sixteenth Street, Suite 800

Denver, CO  80202



Respectfully submitted:


Justin Mohn

1625 E Woodmen Rd Apt 49

Colorado Springs, CO 80920

719-432-8416

*Plaintiff, Pro Se*

36

**⫾ Gmail**                                        **Justin Mohn <justindmohn@gmail.com>**

---

## Plaintiff's First Set of Discovery Requests

---

**Justin Mohn** <justindmohn@gmail.com>                  Mon, Oct 29, 2018 at 11:04 AM
To: "Hogan, Margaret Parnell" <MPHogan@littler.com>, "Pincock, Meri L." <MPincock@littler.com>

Dear Ms. Hogan,

There's certainly no rush in you completing my requests for discovery, but I am asking that you let me know (when you decide) if you plan to respond in a manner which satisfies discovery so I know if I need to write a Motion for Judgement or the Disclosures of Experts, and if you do plan on responding to my discovery requests in a manner which will continue the case, how do you wish to do dispositions✱ We may want to do most, if not all dispositions✱ before it gets catawampus outside.

Regards,

Justin Mohn
719-432-8416
[Quoted text hidden]

# EXHIBIT A

✱ Pro Se Plaintiff meant to say depositions, not dispositions.

## EXHIBIT B

---

# HEARING OFFICER'S DECISION

---

Social Security: xxx-xx-4590
Docket Number: 45272-2018
BYB Date: 10/7/2018
Dep Decision: 11/5/2018
Date of Appeal: 11/4/2018
Appellant: Claimant
Employer No: 133743007

Colorado Department of Labor and Employment
Division of Unemployment Insurance, Appeals Branch
P.O. Box 8988, Denver, CO 80201-8988
303-318-9299 or 1-800-405-2338 Fax: 303-318-9248

**DATE MAILED: November 28, 2018**

JUSTIN D MOHN
1625 E WOODMEN RD APT 49
COLORADO SPRING CO 80920-3384

PROGRESSIVE CASUALTY INS CO
BARNETT ASSOCIATES INC
PO BOX 7340
GARDEN CITY NY 11530-0700

---

**STATEMENT OF CASE:** Justin D Mohn, the claimant, appeared for this hearing by telephone. The employer did not appear for this hearing. There were no other appearances for this hearing. The hearing was held on November 28, 2018 in Colorado Springs, Colorado before Hearing Officer Williams.

No exhibits were entered for the claimant. The hearing officer entered one Division exhibit into evidence. No exhibits were entered for the employer.

The hearing officer held the hearing because the claimant appealed the decision issued by a deputy of the Division of Unemployment Insurance. The deputy disqualified the claimant from entitlement to unemployment insurance benefits pursuant to Section 8-73-108 (5)(e)(VII), C.R.S. The deputy determined that the claimant separated from this employment due to violation of a company rule. The hearing officer must determine whether the claimant is entitled to unemployment insurance benefits, under Colorado law, based on the cause of the separation from employment. The hearing officer reverses the deputy's decision based on the findings and conclusion stated below.

**FINDINGS OF FACT:** The claimant worked for the employer as a full time customer service representative from October 24, 2016, to August 7, 2017. The claimant's supervisor was Rebecca Coffee and his ending rate of pay was $16.80 an hour.

The claimant was discharged by the employer because the employer believed that had kicked open a door.

The claimant is a soccer player and often uses his foot to open doors. The claimant did not kick a door open or cause any damage to a door by using his foot to open it. The claimant had made a complaint of discrimination to the employer two weeks prior to being fired. The claimant received no warnings prior to being discharged.

**CONCLUSIONS OF LAW:** The Colorado Employment Security Act Section 8-73-108 (4) C.R.S., provides that the worker is entitled to unemployment insurance benefits if the worker separates from employment through no fault of the worker.

Fault is not necessarily related to culpability, but only requires a volitional act or the exercise of some control or choice in the circumstances

---

NOTICE OF APPEALS RIGHTS FOLLOWS DECISION

45272-2018

leading to the separation. *Richards v. Winter Park*, 919 P.2d 933 (Colo. App. 1996).

The hearing officer concludes that the claimant is not at fault for his separation from the employer. The hearing officer concludes that the claimant used his foot to assist him in opening doors on a frequent basis but never kicked open a door. The hearing officer is also persuaded that the claimant was never warned by the employer about using his foot to open doors nor did he cause any damage to any doors on the employer's work site. The claimant committed no volitional act nor did he exercise any choice or control over the circumstances that led to his separation from the employer. The hearing officer has considered the totality of the circumstances involved in the claimant's separation and based on the totality of the circumstances determines the claimant is entitled to an award of benefits.

**DECISION:** It is determined that the claimant is entitled to benefits for the separation from this employment. An award of benefits is granted under:, 8-73-108 (4) C.R.S.

The hearing officer reverses the deputy's decision.

*Attention:  **This decision is final unless you appeal it within 20 calendar days from the date this decision was mailed, as instructed below.*** If this decision disqualifies you from receiving unemployment insurance benefits, you will not receive any unemployment benefits based on wages paid by this employer on this or any future claim.  However, you might receive one week of benefits if this employer is your only base period employer. If this is not your only base period employer, decisions on separations from any other base period employers will affect the amount of benefits, if any, that are available to you.

If this decision disqualifies you from receiving benefits from your last employer before filing the initial or additional claim in this benefit year, you will not be paid any benefits you might be entitled to from any other employers until 10 weeks after the date of filing the initial or additional claim.

If this decision reverses a previous award of benefits, you may be liable to repay those benefits.

L. WILLIAMS, Hearing Officer

**IMPORTANT:** This document(s) contains important information about your unemployment compensation rights, responsibilities and/or benefits. It is critical that you understand the information in this document. If needed, call (303) 318-9299; 1-800-405-2338 for assistance in the translation and understanding of the information in the document(s) you have received.

If this decision reverses a previous award of benefits, you may be liable to repay those benefits.  If you have not continued to request payment on CUBLine Online or CUBLine, your claim has shut down.  You must call the Customer Contact Center at 303-318-9000 or 1-800-388-5515 to reopen your claim.

**¡IMPORTANTE!** Este documento(s) contiene información importante sobre sus derechos, obligaciones y/o beneficios de compensación por desempleo. Es muy importante que usted entienda la información contenida en este documento. Si necesita asistencia para traducir y entender la información contenida en el documento(s) que recibió, llame al 303-318-9333; 1-866-422-0402.

## APPEAL RIGHTS

## EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:18-cv-00812-MSK-KMT

JUSTIN MOHN,

      Plaintiff,

v.

PROGRESSIVE INSURANCE,

      Defendant.

---

**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST
REQUESTS FOR PRODUCTION**

---

Defendant Progressive Casualty Insurance Company ("Defendant" or "Progressive"), by and through its undersigned counsel, respectfully serves the following Responses to Plaintiff's First Set of Requests for Production of Documents as follows:

**PRELIMINARY STATEMENT AND GENERAL OBJECTIONS**

1.      These Responses and objections are based upon information presently known and available to Defendant. Defendant will supplement these responses with additional information should additional information become available to Defendant.

2.      Defendant objects to each and every Request for Production to the extent it attempts to impose obligations beyond those established by the Federal Rules of Civil Procedure and the Local Civil Rules of this Court.

3.      Defendant objects to the Requests for Production to the extent that they seek documents protected from discovery under the attorney-client and/or work product or other

applicable privileges or immunities. Any inadvertent disclosure of privileged information or documents by Defendant is without prejudice to, and is not a waiver of any subsequent assertion of privilege by Defendant as to the information or document disclosed or as to other information.

4.      These Responses are made solely for the purpose of this action. Each document produced is subject to all objections as to competence, relevance, materiality, propriety and admissibility, and any and all other objections and/or grounds that would require exclusion of any documents, or portions thereof, produced herewith, all of which objections and grounds are reserved and may be interposed at the time of trial.

5.      Defendant objects to the Requests for Production to the extent that they that seek information or documents in the possession, custody, or control of persons other than Defendant.

6.      Defendant objects to the Requests for Production to the extent that the documents requested therein are equally accessible to, or in the possession of, Plaintiff.

7.      Defendant objects to the Requests for Production to the extent that they are not limited in time.

8.      Defendant objects to the Requests for Production to the extent that they assume facts not in evidence.

9.      Defendant objects to the Requests for Production to the extent they seek documents in a format maintained outside the ordinary course of business.

2

10.     Defendant objects to the Requests for Production to the extent that they seek personal or confidential information or documents relating to any person who is not a party to this action on the grounds that such requests invade the privacy of such individuals.

11.     Defendant objects to the Requests for Production to the extent that they seek information or documents about employees of entities other than Defendant.

12.     Defendant objects to the Requests for Production to the extent that they seek confidential business, personnel, operational, and/or financial information or documents.

13.     Defendant objects to the Requests for Production to the extent that they seek information or documents concerning individuals who were not, or are not, similarly situated to Plaintiff.   Consequently, Defendant will only provide information in its possession concerning similarly situated individuals during the relevant period.

14.     Defendant objects to the Requests for Production to the extent that they are duplicative, redundant, overlapping, and repetitive, and that the Requests, therefore, are unduly burdensome and incommensurate with Plaintiff's legitimate discovery needs.

15.     To the extent that any document request calls for production of Electronically Stored Information ("ESI") or data (including, but not limited to, e-mails), Defendant objects to the production of any such information or data that is not reasonably accessible to Defendant without imposing an undue burden or expense and agree to produce only that which is readily retrievable and responsive to Plaintiff's requests.   Defendant shall produce responsive ESI in PDF format.

16.     Defendant reserves the right to assert any applicable objections to the disclosure of any such additional information or documents, or to the introduction of the

3

responses or any information contained therein as evidence at any subsequent stage of this proceeding.

17.    All General Objections apply to each specific Request without reiteration therein. A specific objection that expressly incorporates the substance of a General Objection, is not intended to be, and shall not be deemed a waiver of the applicability of any General Objection to any other Request.

The foregoing Qualifications and General Conditions are incorporated into each of the Responses and Objections to the specific Requests set forth below.

## REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**: Please produce Plaintiff's complete personnel file(s), including, but not limited to, all grievances, human resources investigations, and charges or complaints of discrimination or retaliation filed by or against Plaintiff. Please include documents that support any and all of your contentions that Plaintiff was not discriminated and or retaliated against.

**RESPONSE:**  Following a reasonable search, Defendant has identified and is producing Plaintiff's personnel file and other documents responsive to this request.  The personnel file and documents are being produced as maintained in the ordinary course of business, and bates labeled Progressive 0000782; Progressive 0000784; Progressive 0000552; Progressive 0000001 –39. To the extent that Plaintiff's request seeks additional materials, Defendant objects that additional searches are not proportional to the needs of this case. Defendant further objects to the extent that this request seeks documents protected by the attorney/client or work product privileges. Finally, Defendant objects to this request to the extent that it purports to be a single

Request for Production. Defendant is not knowingly withholding any non-privileged documents on the basis of this objection.

**REQUEST FOR PRODUCTION NO. 2**: Please produce copies of all e-mail and other electronic communications between Plaintiff and Defendant for the time period beginning January 15, 2016 until November 13, 2018. Please include the e-mail communications between Plaintiff's Progressive work email address of JUSTIN_D_MOHN@progressive.com and the Progressive work email addresses of the following defendants: Progressive Academy Coach Greg Lofthus, Progressive Manager Beverly Auld-Feldman, Progressive Manager Tamara Marchese, Progressive Supervisor Rebecca Coffey, Progressive's Human Resources Department, Progressive Human Resources Representative Jim Lawson. and Progressive Site Manager Charlie Baughman. If possible, please include communications stored in the conversation history inbox of Plaintiff's Progressive work email address so as to produce Skype (or other messenger) conversations.

**RESPONSE:** Defendant has performed a reasonable ESI search for email correspondence between Plaintiff and Beverly Auld-Feldman, Tamara Marchese, Rebecca Coffey, Progressive's Human Resources Department, Jim Lawson, and Charlie Baughman. Defendant has reasonably limited this search according to the following key search terms: Discrimin*; Gender; Sex; Male; Female; Graduat*; "Held Back"; Delay*; Prevent*; "pay scale"; Pay; "ETB"; Time w/2 off; Vacation; Sacramento; Transfer; Applic*; Schedule*; Position; Priority; and Intellectual Property. Defendant is producing responsive documents that may be relevant to this request bates labeled Progressive 0000555 – 826.

5

To the extent that Plaintiff's request seeks additional documents, Defendant objects that this request is overbroad and unduly burdensome in that it does not limit the emails requested to categories of information relevant to this lawsuit. Accordingly, the substantial cost associated with searching for and producing additional documents is not proportional to the needs of this case when balanced against the amount in controversy.

**REQUEST FOR PRODUCTION NO. 3**: Please produce any and all personnel manuals, employee handbooks, benefits manuals, transfer policies, and salary schedules which were applicable to Plaintiff at any time during his employment with Progressive.

**RESPONSE:**  Following a reasonable search, Defendant has identified and is producing the following policies that were applicable to Plaintiff during his employment, bates labeled Progressive 0000787; Progressive 0000788; Progressive 0000040; and Progressive 0000098. To the extent that Plaintiff's request seeks additional materials, Defendant objects that the phrase "salary schedules" is vague and ambiguous. Defendant further objects that requiring Defendant to produce "any and all" policies "applicable to Plaintiff at any time during his employment" is overbroad and unduly burdensome. The request is not proportional to needs of this case for the same reason.

**REQUEST FOR PRODUCTION NO. 4**: Please produce any and all relative coaches', supervisors, managers, human resources representatives' and or other relative job roles' manuals which were in effect at any time during Plaintiff's employment with Progressive for the respective roles of Greg Lofthus, Beverly Auld-Feldman, Rebecca Coffey, Jim Lawson, Tamara Marchese, and Charlie Baughman.

FIRMWIDE:159288657.2 076059.1053

**RESPONSE:** Defendant objects that this request does not seek documents that are relevant or reasonably likely to lead to the discovery of relevant or admissible evidence. Defendant further objects that the phrase "coaches', supervisors, managers, human resources representatives' and or other relative job roles' manuals" is vague and ambiguous and Defendant cannot speculate as to what documents are sought by this request. Subject to these objections, Defendant responds that it is not aware of responsive documents in existence.

**REQUEST FOR PRODUCTION NO. 5**: Please produce any and all documents that refer or relate to Progressive's policies or procedures regarding performance evaluations and or job reviews which were in effect at any time during Plaintiff's employment.

**RESPONSE:** Please see Defendant's objections and response to Request for Production No. 3.

**REQUEST FOR PRODUCTION NO. 6**: Please produce any and all documents that refer or relate to your policies or procedures for disciplining and or terminating the employment of one of your employees.

**RESPONSE:** Please see Defendant's objections and response to Request for Production No. 3.

**REQUEST FOR PRODUCTION NO. 7**: Please produce any and all documents that refer or relate to any interview(s) which you, or anyone acting on your behalf, had with plaintiff before you hired him, including, but not limited to, any notes from such interviews.

**RESPONSE:** Following a reasonable search, Defendant has identified and is producing the following documents, bates labeled Progressive 0000235 - 307. To the extent that Plaintiff's request seeks additional materials, Defendant objects that additional searches are not

7

proportional to the needs of this case. Defendant further objects that the phrase "anyone acting on your behalf" is overbroad, vague, and ambiguous.

**REQUEST FOR PRODUCTION NO. 8**: Please produce any and all documents and communications that refer or relate to any performance evaluations, performance metrics, compliments, or job reviews of Plaintiff during his employment with Progressive. Please include the compliments (or the number of compliments) from customers for Plaintiff's customer service which were forwarded to Plaintiff's work phone and or his supervisor Rebecca Coffey's work phone [preferably as ESI, converted to .wav or .mp3 file format, a standard, 120 mm compact disk/CO-ROM, and or a transcript]. Please state the name, gender, position or job title, and employment dates of each person who gave Plaintiff's performance evaluation and or job review per Interrogatory 13 in Plaintiff's First Set of Interrogatories.

**RESPONSE:** In addition to what has already been produced, and following a reasonable search, Defendant has identified and is producing the following documents, bates labeled Progressive 0000597; Progressive 0000697; Progressive 0000749; Progressive 0000512; Progressive 0000514; Progressive 0000516; Progressive 0000518; Progressive 0000520; Progressive 0000522; Progressive 0000523; Progressive 0000524; Progressive 0000525; Progressive 0000527; Progressive 0000528; Progressive 0000532; Progressive 0000535; Progressive 0000538; Progressive 0000540; and Progressive 0000542. To the extent that Plaintiff's request seeks additional materials, Defendant objects that additional searches are not proportional to the needs of this case. Defendant further objects that the terms "compliments" and "job reviews" are vague and ambiguous. Additionally, Defendant objects to this Request for Production to the

8

extent that it requests Defendant "state" an answer, which is appropriate for an Interrogatory, but not a Request for Production.

**REQUEST FOR PRODUCTION NO. 9**: Please produce any and all documents and communications that refer or relate to any performance evaluations, performance metrics, or job reviews of plaintiff's coworkers or other employees in the same job role as Plaintiff at the same site (Colorado Springs) during Plaintiff's employment with Progressive. Please include the compliments (or the number of compliments) from customers to Plaintiff's coworkers for his co-worker's customer service to said customers (in the same file format as the previous production response). Please state the name, gender, position or job title, and employment dates of each employee and the person who gave each employee's performance evaluation and or job review per Interrogatory 13 in Plaintiff's First Set of Interrogatories.

**RESPONSE:** Defendant objects to this request as irrelevant and unlikely to lead to the discovery of relevant or admissible evidence. This request is also unduly invasive to the privacy interests of non-parties to this lawsuit and overbroad and unduly burdensome to the extent that it requests "any performance evaluations" of Plaintiff's co-workers. Additionally, Defendant objects to this Request for Production to the extent that it requests Defendant "state" an answer, which is appropriate for an Interrogatory, but not a Request for Production.

**REQUEST FOR PRODUCTION NO. 10:** Please produce any and all documents and communications that refer or relate to any write-ups, performance improvement plans, complaints, comments, criticisms, warnings, disciplinary actions, or counseling given to Plaintiff, oral or written, concerning Plaintiff's employment with Progressive. Please state the

9

name, gender, position or job title, and employment dates of each person who made decisions that refer or relate to any and all disciplinary or adverse actions given to Plaintiff, oral or written, concerning Plaintiff's employment with Progressive per Interrogatory 13 in Plaintiff's First Set of Interrogatories.

**RESPONSE:** Please see Defendant's objections and responses to Requests for Production Nos. 1 and 2, as documents responsive to this request are being produced therein.

**REQUEST FOR PRODUCTION NO. 11:** Please produce any and all documents and communications that refer or relate to any write-ups, performance improvement plans, complaints, comments, criticisms, warnings, disciplinary actions, or counseling given to Plaintiff's coworkers or other employees in the same job role at the same site (Colorado Springs) during Plaintiff's employment with Progressive, oral or written, concerning these coworkers' employments with Progressive. Please state the name, gender, position or job title, and employment dates of each employee and the person who made decisions that refer or relate to any and all disciplinary or adverse actions given to each employee, oral or written, concerning their employment with Progressive per Interrogatory 13 in Plaintiff's First Set of Interrogatories.

**RESPONSE:** Defendant objects to this request as irrelevant and unlikely to lead to the discovery of relevant or admissible evidence.  This request is also unduly invasive of the privacy interests of non-parties to this lawsuit and overbroad and unduly burdensome to the extent that it requests "any write-ups, performance improvement plans, complaints, comments, criticisms, warnings, disciplinary actions, or counseling given to Plaintiff's coworkers." Additionally, Defendant objects to this Request for Production to the extent that it requests Defendant "state" an answer,

which is appropriate for an Interrogatory, but not a Request for Production.

**REQUEST FOR PRODUCTION NO. 12:** Please produce any and all documents describing the work duties and/or responsibilities of Plaintiff's position or job role when he was employed at Progressive.

**RESPONSE:** Following a reasonable search, Defendant has identified and is producing documents bates labeled Progressive 0000171-72, which is sufficient to show Plaintiff's job duties while he was employed at Progressive. To the extent that Plaintiff's request seeks additional materials, Defendant objects that additional searches are not proportional to the needs of this case. Defendant is not knowingly withholding any documents on the basis of this objection.

**REQUEST FOR PRODUCTION NO. 13:** Please produce any and all documents, communications, and or statements of witnesses or potential witnesses or persons interviewed by Progressive in connection with this lawsuit. Please include documents which refer or relate to witnesses whom Defendant intends to call at trial.

**RESPONSE:** Defendant objects to this request to the extent it seeks the production of documents that may be subject to the attorney-client privilege, the work product doctrine, or any other privilege or protection. Subject to this objection Defendant responds that no responsive non-privileged documents exist.

**REQUEST FOR PRODUCTION NO. 14:** Please produce any and all e-mails, notes, memoranda or other documents that refer or relate to any and all communications by, between or among any of your current or former employees, officers or representatives that in any way refer or relate to Plaintiff and identify the individuals who communicated

11

per Interrogatory 13 in Plaintiff's First Set of Interrogatories.

**RESPONSE:** Defendant objects to this request as overbroad and unduly burdensome in that it requests "any and all communications" "by, between or among" "any...current or former employees" that "in any way refer or relate to Plaintiff." It is not narrowed by relevant time period, custodian, subject matter, etc. It is not proportional to the needs of this case for the same reason. Defendant further objects to the extent that this request seeks to invade the attorney/client and/or work product privileges. Subject to these objections, Defendant responds as follows: please see Defendant's response to Request for Production No. 2 as documents responsive to this request are being produced therein.

**REQUEST FOR PRODUCTION NO. 15:** Please produce any and all documents that refer or relate to any charge, complaint, allegation, execution of a settlement agreement, grievance and/or report, formal or informal, by any of your current or former employees about discrimination, retaliation, and or employment torts over the past 5 years.

**RESPONSE:** Defendant objects to this request on the basis that it seeks inadmissible "me too" evidence and therefore is not proportional to the needs of this case. The U.S. Supreme Court has held that evidence related to alleged discrimination against employees other than the Plaintiff, so-called "me too" evidence, is generally not relevant to claims of discrimination. *See generally Sprint v. Mendelsohn*, 552 U.S. 379 (2008); *Sprint v. Mendelsohn*, 587 F. Supp. 2d 1201, 1218 (D. Kan. 2008), aff'd, 402 Fed. Appx. 337, 2010 U.S. App. LEXIS 23451 (2010) (applying ruling on remand to exclude all "me too" evidence). Further, information related to the fact that discrimination has previously been alleged and/or that such allegations have been investigated is not probative to whether discrimination

12

occurred as a matter of law. *See Scaramuzzo v. Glenmore Distilleries, Co.*, 501 F. Supp. 727, 733 (N.D. Ill. 1980) ("evidence or testimony [regarding prior charges of discrimination] would . . . raise potentially damaging inferences against Glenmore that are not supported by the mere fact that a 'charge' had been filed."). Accordingly, requests related to allegations of discrimination by third parties, including requests related to any component of such allegations, the employer's response to them, or actions that were ultimately taken in relation to them, seek information that is not itself relevant, and which, without some concrete and specific demonstrated connection to the Plaintiff and/or the Plaintiff's claims, are also not reasonably calculated to lead to the discovery of relevant evidence.

Defendant further objects to this request to the extent that is seeks documents protected by the attorney/client or work product privileges.

**REQUEST FOR PRODUCTION NO. 16:** Please produce any and all documents or communications that refer or relate to your files regarding the qualifications, scores and job skills for the person(s) hired or promoted by you for the technical writing and legal assistant job role(s) at Progressive which Plaintiff applied for while he was employed at Progressive, as well as such files for the person(s) in Plaintiff's training class who were cross-trained and or transferred departments. Per Interrogatory 13 in Plaintiff's First Set of Interrogatories, please state the name, gender, position or job title, and employment dates of the person(s) who made the personnel decisions, the person(s) hired or promoted by you for the aforementioned job roles, and the person(s) in Plaintiff's training class who were cross-trained and or transferred departments.

**RESPONSE:** Following a reasonable search, Defendant has identified and is producing the following documents, bates labeled Progressive 0000545; Progressive 0000173; Progressive

13

0000204 – 233; Progressive 0000318 – 356. To the extent that Plaintiff's request seeks additional materials, Defendant objects that additional searches are not proportional to the needs of this case. Defendant further objects that the phrase "files for the person(s) in Plaintiff's training class who were cross-trained and or transferred departments" is vague and ambiguous. Defendant also objects to this request to the extent that it seeks confidential information and personally identifiable information regarding non-parties to this lawsuit. Additionally, Defendant objects to this Request for Production to the extent that it requests Defendant "state" an answer, which is appropriate for an Interrogatory, but not a Request for Production.

**REQUEST FOR PRODUCTION NO. 17**: Please produce any and all documents that refer or relate to any comparison made between Plaintiff and any other individual employed by Progressive the period of time beginning 1 year prior to Plaintiff's employment through the present who held the same or similar position, title, job duties or job description as Plaintiff. Please state the name, gender, position or job title, and employment dates of each employee and the person who made the comparison per Interrogatory 13 in Plaintiff's First Set of Interrogatories.

**RESPONSE:** Following a reasonable search, Defendant has identified and is producing the following documents, bates labeled Progressive 0000549 and Progressive 0000551. To the extent that Plaintiff's request seeks additional materials, Defendant objects that additional searches are not proportional to the needs of this case. Defendant further objects to the extent that this request seeks confidential information and personally identifiable information regarding non-parties to this lawsuit. Additionally, Defendant objects to this Request for Production to the extent that it

requests that Defendant "state" an answer, which is appropriate for an Interrogatory, but not a Request for Production.

**REQUEST FOR PRODUCTION NO. 18**: Please produce a sound recording [preferably as ESI, and or converted to .wav or .mp3 file format, or even a standard, 120 mm compact disk/CO-ROM] of the phone call Plaintiff took on August 5th of 2017 before clocking out for lunch while he was employed at Progressive. For reference, the phone call was between myself and an upset female customer, it was a relatively long conversation, about an hour or more. This audio may contain offensive language which Plaintiff or Progressive should be able to edit out using software if necessary.

**RESPONSE:** After a reasonable search, Defendant was unable to locate any recording matching the description of this request. Specifically, Defendant searched its NICE system under Plaintiff's name, phone number, and unique employee number. Multiple Progressive representatives listened to over twenty phone calls available in its system on or around the date identified above, none of which matched the description of this request. Defendant objects that additional searches are not proportional to the needs of this case nor likely to lead to discovery of admissible evidence. Defendant further objects to the extent that this request seeks confidential information and personally identifiable information regarding non-parties to this lawsuit.

**REQUEST FOR PRODUCTION NO. 19:** Please produce a document which lists or reveals all current Progressive employees at the Colorado Springs site and identity their names, gender, employment dates, and job or position title; as well as a second document which lists all Progressive employees at the Colorado Springs site [with the same identifying

FIRMWIDE:159288657.2 076059.1053

information] from within the timeframe of January 15th, 2016 to when Plaintiff was terminated from employment at Progressive.

**RESPONSE:** Following a reasonable search, Defendant has identified and is producing the following document, bates labeled Progressive 0000544, which reflects individuals in Plaintiff's Academy class. To the extent that Plaintiff's request seeks additional information, Defendant objects to the extent that this request requires Defendant to create documents not in existence. Defendant further objects to the extent that this request seeks confidential information and personally identifiable information regarding non-parties to this lawsuit. Finally, Defendant objects that this request is overbroad and not proportional to the needs of this case in that it seeks lists of "all Progressive employees" at the Colorado Springs site and is not limited by job title or other relevant factor.

**REQUEST FOR PRODUCTION NO. 20:** Please produce a photograph, picture, image in electronic file format (.tif, .jpeg, .pdf, etc.), or some other form of visual media which fully and clearly reveals Greg Lofthus's tattoo on his arm of a dog (or other canine such as a wolf) which was given to him by Progressive (or paid for by Progressive).

**RESPONSE:** Defendant hereby incorporates its objections and Answer to Interrogatory No. 20 herein. Additionally, Defendant objects to this request to the extent that it requires Defendant to create documents not in existence.

**REQUEST FOR PRODUCTION NO. 21:** Please produce a photograph, picture, image in electronic file format (.tif, .jpeg, .pdf, etc.), or some other form of visual media which reveals any tattoo(s) on Beverly Auld-Feldman, Jim Lawson, and or Charlie Baughman given to them by Progressive (or paid for by Progressive).

16

**RESPONSE:** Defendant hereby incorporates its objections and response to Request for Production No. 21. Additionally, Defendant objects to this request to the extent that it requires Defendant to create documents not in existence.

**REQUEST FOR PRODUCTION NO. 22:** Please produce any and all [not insurance policy related] documents and or communications between Progressive (or employees of Progressive) and Plaintiffs family members [who live or lived in Pennsylvania] for the time period of January 1st, 2011 until present.

**RESPONSE:** After a reasonable search, Defendant responds that it is not aware of any responsive documents in existence. Defendant objects that additional searches are not proportional to the needs of this case. Defendant further objects that the phrase "family members" is not defined, and therefore vague and ambiguous. Finally, Defendant objects that this request does not seek relevant information nor is it reasonably likely to lead to the discovery of relevant or admissible evidence.

**REQUEST FOR PRODUCTION NO. 23:** Please produce any and all documents and or agreements that refer or relate to labor and employment which were created, discussed, reviewed, negotiated, signed, and or executed during the meeting(s) of Mayor John Suthers and Governor John Hickenlooper at or with Progressive Insurance while Plaintiff was employed with Progressive. Please also include in this production any such documents or agreements which were created, discussed, reviewed, and or negotiated during the aforementioned meeting(s) but which were signed and or executed at another time and or place.

**RESPONSE:** Defendant objects that the information sought by this request is not relevant or reasonably likely to lead to the discovery of relevant or admissible evidence. Defendant also objects that this request is overbroad in that that it does not identify a specific meeting or event about which it seeks information. It is also not proportional to the needs of discovery and is unduly burdensome. Subject to these objections, please see Defendant's response to Interrogatory No. 24.

**REQUEST FOR PRODUCTION NO. 24:** Please produce documents and or communications you intend to introduce into evidence during the trial of this lawsuit.

**RESPONSE:** Defendant objects to this request as premature. Defendant will identify trial exhibits in accordance with the Court's Scheduling Order.

**REQUEST FOR PRODUCTION NO. 25:** Please produce copies of any and all books, documents or other tangible things which may or may not be introduced at trial, but which may have a bearing on this lawsuit and may be used as demonstrative evidence at trial, including any and all documents referred to by Defendant to answer Plaintiff's First Set of Interrogatories.

**RESPONSE:** Defendant hereby incorporates its objections and response to Request for Production No. 24. Defendant further objects to this request to the extent that it seeks to impose requirements on Defendant beyond the scope of the Federal or Local Rules of Civil Procedure.

18

DATED this 21st day of December.

Margaret Parnell Hogan
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO  80202
Phone:  303.629.6200
Fax: 303.629.0200
Email:  mphogan@littler.com
          kbosbyshell@littler.com

ATTORNEYS FOR DEFENDANT

19

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December, 2018, a true and correct copy of the foregoing **DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION** was served on the following via U.S. Mail postage prepaid and FedEx.

Justin Mohn
1625 E. Woodmen Rd, Apt. 49
Colorado Springs, CO  80920
justindmohn@gmail.com

*Pro se*

*s/      Arlene Aguilar*
Arlene Aguilar

FIRMWIDE:159288657.2 076059.1053

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No.  1:18-cv-00812-MSK-KMT

JUSTIN MOHN,

      Plaintiff,

v.

PROGRESSIVE INSURANCE,

      Defendant.

---

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST
## SET OF INTERROGATORIES

---

Defendant Progressive Casualty Insurance Company ("Defendant" or "Progressive"), by and through its undersigned counsel, respectfully serves the following Objections and Responses to Plaintiff's First Set of Interrogatories as follows:

## PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

These Responses and objections are based upon information presently known and available to Defendant.  Defendant will supplement these responses with additional information should additional information become available to Defendant.

1.      Defendant objects to each and every Interrogatory to the extent it attempts to impose obligations beyond those established by the Federal Rules of Civil Procedure and the Local Civil Rules of this Court.

2.      These Responses are made solely for the purpose of this action.  Each response and/or document produced is subject to all objections as to competence, relevance,

materiality, propriety and admissibility, and any and all other objections and/or grounds that would require exclusion of any documents, or portions thereof, produced herewith, all of which objections and grounds are reserved and may be interposed at the time of trial.

3. Defendant objects to the Interrogatories to the extent that they are not limited in time or scope.

4. Defendant objects to the Interrogatories to the extent that they seek personal or confidential information or documents relating to any person who is not a party to this action on the grounds that such requests invade the privacy of such individuals.

5. Defendant objects to the Interrogatories to the extent that they seek confidential business, personnel, operational, and/or financial information or documents.

6. Defendant objects to the Interrogatories to the extent that they seek information or documents concerning individuals who were not, or are not, similarly situated to Plaintiff.

7. Defendant reserves the right to assert any applicable objections to the disclosure of any such additional information or documents, or to the introduction of the responses or any information contained therein as evidence at any subsequent stage of this proceeding.

8. All General Objections apply to each specific Request without reiteration therein. A specific objection that expressly incorporates the substance of a General Objection, is not intended to be, and shall not be deemed a waiver of the applicability of any General Objection to any other Request.

The foregoing Qualifications and General Conditions are incorporated into each of the Responses and Objections to the specific Requests set forth below.

## RESPONSES TO FIRST SET OF INTERROGATORIES

**Interrogatory No. 1:** Identify all persons who may have knowledge of facts concerning the allegations in the Complaint or the Answer and state your understanding of their knowledge.

**Answer:** Defendant objects to this request as overbroad to the extent that it requires Defendant to identify "all" persons who "may" have knowledge of "any" allegations in the Complaint or the Answer. The request is also not proportional to the needs of this case for that reason. Subject to these objections, Defendant answers as follows:

(1) Justin Mohn, 1625 E. Woodmen Rd., Apt. 49, Colorado Springs, CO 80920, 719-432-8416. Mohn is the Plaintiff in this case and has knowledge regarding his employment with Progressive and his claims against Progressive.

(2) Greg Lofthus, c/o Margaret Parnell Hogan, Littler Mendelson, P.C., 1900 Sixteenth Street, Suite 800 Denver, CO 80202, 303-629-6200, Lofthus is the CRM Coach for certain individuals in Progressive's Customer Relationship Management ("CRM") organization. Lofthus likely has knowledge regarding Mohn's employment with Progressive and he may have knowledge of the valid reasons why Mohn is not entitled to any relief for the claims alleged in the lawsuit.

(3) Beverly Auld-Feldman, c/o Margaret Parnell Hogan, Littler Mendelson, P.C., 1900 Sixteenth Street, Suite 800, Denver, CO 80202, 303-629-6200, Auld-Feldman is a CRM Manager for Progressive. Auld-Feldman likely has knowledge regarding Mohn's employment with Progressive and of the valid reasons why Mohn is not entitled to any relief for the claims alleged in the lawsuit.

(4)  Rebecca Coffey, c/o Margaret Parnell Hogan, Littler Mendelson, P.C., 1900 Sixteenth Street, Suite 800, Denver, CO 80202, 303-629-6200, Coffey is a CRM Supervisor for Progressive. Coffey likely has knowledge regarding Mohn's employment with Progressive and of the valid reasons why Mohn is not entitled to any relief for the claims alleged in the lawsuit.

(5)  Charlie Baughman, c/o Margaret Parnell Hogan, Littler Mendelson, P.C., 1900 Sixteenth Street, Suite 800, Denver, CO 80202, 303-629-6200. Baughman is a Colorado Springs, Colorado Senior Site Manager for Progressive. Baughman likely has knowledge regarding Mohn's employment with Progressive and of the valid reasons why Mohn is not entitled to any relief for the claims alleged in the lawsuit.

(6)  Steven J. "Jim" Lawson, c/o Margaret Parnell Hogan, Littler Mendelson, P.C., 1900 Sixteenth Street, Suite 800, Denver, CO 80202, 303-629-6200. Lawson is a Human Resources representative for Progressive. Lawson likely has knowledge regarding Mohn's employment with Progressive and of the valid reasons why Mohn is not entitled to any relief for the claims alleged in the lawsuit.

(7)  Sharon Riegel, c/o Margaret Parnell Hogan, Littler Mendelson, P.C., 1900 Sixteenth Street, Suite 800, Denver, CO 80202, 303-629-6200. Riegel is a Senior Human Resources Business Leader for Progressive. Riegel likely has knowledge regarding Mohn's employment with Progressive and of the valid reasons why Mohn is not entitled to any relief for the claims alleged in the lawsuit.

(8)  Jeannine Bryla, c/o Margaret Parnell Hogan, Littler Mendelson, P.C., 1900 Sixteenth Street, Suite 800, Denver, CO 80202, 303-629-6200.  Bryla is a Senior Human

Resources Manager (CRM) for Progressive. Bryla likely has knowledge regarding Mohn's employment with Progressive and of the valid reasons why Mohn is not entitled to any relief for the claims alleged in the lawsuit.

(9) Scott Conley, c/o Margaret Parnell Hogan, Littler Mendelson, P.C., 1900 Sixteenth Street, Suite 800, Denver, CO 80202, 303-629-6200. Conley is a Corporate Examiner (Investigations) for Progressive. Conley likely has knowledge regarding Mohn's employment with Progressive and of the valid reasons why Mohn is not entitled to any relief for the claims alleged in the lawsuit.

(10) Preston Bernardi, c/o Margaret Parnell Hogan, Littler Mendelson, P.C., 1900 Sixteenth Street, Suite 800, Denver, CO 80202, 303-629-6200. Benardi is a Manager of Emergency Communications (Security) for Progressive. Bernardi likely has knowledge regarding Mohn's employment with Progressive and of the valid reasons why Mohn is not entitled to any relief for the claims alleged in the lawsuit.

(11) Thomas Haas, c/o Margaret Parnell Hogan, Littler Mendelson, P.C., 1900 Sixteenth Street, Suite 800, Denver, CO 80202, 303-629-6200. Haas is a Security Contractor for Progressive. Haas likely has knowledge regarding Mohn's employment with Progressive and of the valid reasons why Mohn is not entitled to any relief for the claims alleged in the lawsuit.

(12) Sue Eline-White, c/o Margaret Parnell Hogan, Littler Mendelson, P.C., 1900 Sixteenth Street, Suite 800, Denver, CO 80202, 303-629-6200. Eline-White is a Senior Human Resources Manager (Claims) for Progressive. Eline-White likely has knowledge

regarding Mohn's employment with Progressive and of the valid reasons why Mohn is not entitled to any relief for the claims alleged in the lawsuit.

(13) Patricia Harvey, c/o Margaret Parnell Hogan, Littler Mendelson, P.C., 1900 Sixteenth Street, Suite 800, Denver, CO 80202, 303-629-6200. Harvey is a Human Resources Consultant for Progressive. Harvey likely has knowledge regarding Mohn's employment with Progressive and of the valid reasons why Mohn is not entitled to any relief for the claims alleged in the lawsuit.

Answering further, Defendant incorporates its current and any future supplemental Rule 26 Disclosures.

**Interrogatory No. 2:** Identify all persons with whom Defendant and officers of Defendant have communicated (exclusive of counsel in the above-captioned action) concerning the allegations in the Complaint or the Answer and describe those communications.

**Answer:** Defendant objects to this Interrogatory to the extent that it is invasive of the attorney-client and attorney work product privileges. Defendant further objects to this request as overbroad to the extent that it requires Defendant to identify "all" persons who "may" have knowledge of "any" allegations in the Complaint or the Answer. The request is also not proportional to the needs of this case for that reason. Subject to these objections, Defendant answers as follows: please see Defendant's Answer to Interrogatory No. 1.

**Interrogatory No. 3:** Identify all persons whom Defendant intends to call as witnesses at trial and give a summary of their anticipated testimony.

**Answer:** Defendant objects to this Interrogatory as premature. Defendant will identify trial witnesses in accordance with the Court's Scheduling Order.

**Interrogatory No. 4:**   For the past five years, identify all persons who have made complaints of employment discrimination, a hostile work environment, employment torts, sex-based pay discrimination under the Equal Pay Act of 1963, or retaliation, against Defendant(s), its employees or officers; set forth the allegations of the complaint in detail; and describe in detail any action taken by the Defendant or its employees in response to the complaint. Complaints include verbal complaints, written complaints, lawsuits, agency filings, and any other means by which employees have complained.

**Answer:** Defendant objects to this request on the basis that it seeks inadmissible "me too" evidence and therefore is not proportional to the needs of this case.  The U.S. Supreme Court has held that evidence related to alleged discrimination against employees other than the Plaintiff, so-called "me too" evidence, is generally not relevant to claims of discrimination. *See generally Sprint v. Mendelsohn*, 552 U.S. 379 (2008); *Sprint v. Mendelsohn*, 587 F. Supp. 2d 1201, 1218 (D. Kan. 2008), aff'd, 402 Fed. Appx. 337, 2010 U.S. App. LEXIS 23451 (2010) (applying ruling on remand to exclude all "me too" evidence).  Further, information related to the fact that discrimination has previously been alleged and/or that such allegations have been investigated is not probative to whether discrimination occurred as a matter of law. *See Scaramuzzo v. Glenmore Distilleries, Co.*, 501 F. Supp. 727, 733 (N.D. Ill. 1980) ("evidence or testimony [regarding prior charges of discrimination] would . . . raise potentially damaging inferences against Glenmore that are not supported by the mere fact that a 'charge' had been filed.").   Accordingly, requests related to allegations of discrimination by third

parties, including requests related to any component of such allegations, the employer's response to them, or actions that were ultimately taken in relation to them, seek information that is not itself relevant, and which, without some concrete and specific demonstrated connection to the Plaintiff and/or the Plaintiff's claims, are also not reasonably calculated to lead to the discovery of relevant evidence.

**Interrogatory No. 5:**  Set forth in detail which allegations in the Complaint Defendant was aware of prior to the service of the Complaint in this lawsuit.  State the employee or employees who were aware of such facts, the source of their knowledge, the facts of which each such employee was aware, and Defendant's response to such facts, if any.

**Answer:** Defendant objects to this request as unduly burdensome in that it requires Defendant to ascertain what each Progressive employee knew and at what time he/she knew it without limitation by name, title, dates of employment, etc. The request is not proportional to the needs of this case for the same reason. Defendant further objects to the extent that this request seeks to invade the attorney-client and/or work product privileges. Subject to these objections, Defendant answers that in lieu of responding to this Interrogatory and pursuant to Rule 33(d), Defendant is producing emails related to Plaintiff's employment in response to Plaintiff's Requests for Production, which are sufficient to provide the information requested by this Interrogatory that is not otherwise objectionable.

**Interrogatory No. 6:**  Identify any and all individuals who participated in any investigation initiated by Defendant in response to Plaintiff's complaints of discrimination and describe the actions of such individuals in detail.  Please include what steps (identify the individuals

involved, and the relevant dates), if any, Defendant took to prevent retaliation against Plaintiff after he complained about discrimination.

**Answer:** Defendant objects to this request to the extent that it calls for a narrative, thus exceeding the scope of the Federal Rules of Civil Procedure, by asking Defendant to "describe" "in detail" the actions taken by each individual. Defendant further objects to the extent that this request seeks to invade the attorney-client and/or work product privileges. Subject to these objections, Defendant answers as follows: Sharon Riegel, Sue Eline-White, Patricia Harvey, Jim Lawson, Rebecca Coffey, Beverly Auld-Feldman, Greg Lofthus, Charlie Baughman, and Progressive's legal counsel were all involved in addressing and/or investigating Plaintiff's various complaints throughout his employment. They proceeded in accordance with Progressive's policies of anti-discrimination and anti-retaliation, including without limitation, conducting a prompt and thorough investigation.

**Interrogatory No. 7**: Does the Defendant contend that the Defendant maintained a Human Resources department (or business partner) and or Human Resources manager during the relevant time period (January 1st, 2016 to present) of the alleged discrimination complained of in this suit? If so, identify the Human Resources manager and all employees of the Human Resources department (or business partner) who were involved in the events alleged in the Complaint or Answer and describe their actions.

**Answer:** Defendant objects that this request is vague and ambiguous. Defendant further objects that this request seeks information that is not relevant or reasonably likely to lead to the discovery of information that is relevant or otherwise admissible. Subject to these objections, Defendant states that it maintains Human Resources personnel who addressed

various issues related to Plaintiff's employment with Progressive. These individuals included (without limitation) Jim Lawson, Jeannine Bryla, Sharon Riegel, Sue Eline-White, and Patricia Harvey.

**Interrogatory No. 8:** Describe in detail all training provided to Defendant's employees regarding the prevention of employment discrimination/harassment, employment torts, and/or retaliation, and complaint procedures, including the date and place of each such session. Identify each person who conducted each training session, and the relevant persons who attended (such as Greg Lofthus, Beverly Auld-Feldman, Jim Lawson, Rebecca Coffey, Tamara Marchese, and Charlie Baughman), and state whether attendance was mandatory.

**Answer:** Defendant objects to this request to the extent that it calls for a narrative by asking Defendant to "describe in detail" all training provided to each employee identified above. Defendant further objects to the extent that this request purports to be a single interrogatory and that it impermissibly contains multiple subparts. *See, e.g., Wildearth Guardians v. Public Service Co. of Colorado*, 2010 WL 5464313 (D. Colo. Dec. 29, 2010) ("once a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated."). Subject to these objections, Defendant answers as follows: pursuant to Rule 33(d), in lieu of answering this Interrogatory, Defendant is producing documents sufficient to show the training history for Greg Lofthus, Beverly Auld-Feldman, Jim Lawson, Rebecca Coffey, Tamara Marchese, and Charlie Baughman, bates labeled as Progressive 0000358 - Progressive 0000512.

**Interrogatory No. 9:** Please list and or reveal the salary or hourly wage of each employee in Plaintiff's training class and identify each employee. Please include each employee's starting salary or hourly wage, any and all changes in salary or hourly wage, and the dates of changes in salary or hourly wage.

**Answer:** Defendant objects to this request to the extent that is seeks confidential and personally identifiable information of non-parties to this lawsuit. Subject to this objection, Defendant answers as follows: pursuant to Rule 33(d), in lieu of answering this Interrogatory, Defendant is producing documents sufficient to show the respective wages of the employees in Plaintiff's training class bates labeled Progressive 0000165-71.

**Interrogatory No. 10:** If Defendant contends Plaintiff has not performed any act, or a condition precedent has not occurred, that is necessary for Plaintiff to file suit, state with particularity the act or event defendant alleges has not occurred.

**Answer:** Defendant objects to this request as vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant is unable to speculate as to what information is sought by this Interrogatory and will not answer this Interrogatory on that basis. Defendant further objects that this request requires a legal response not within the purview of the individual answering these interrogatories. Defendant invites Plaintiff to clarify the information sought by Interrogatory No. 10.

**Interrogatory No. 11:** If Defendant contends that Plaintiff was not discriminated against at Progressive, retaliated against, denied a promotion, a victim of sex-based pay discrimination, and or wrongfully terminated, state with particularity all facts supporting the contention(s).

**Answer:** Defendant objects that this Interrogatory seeks a dress rehearsal of Defendant's presentation at trial, and thus no response is required. *See, e.g., United States v. Renault, Inc.* 27 F.R.D. 23, 26-27, 29 (S.D.N.Y. 1960); 4a Moore's Federal Practice 33.12 (2d ed. 1980). Defendant also objects to the extent that this Interrogatory seeks the mental impressions of counsel, and thus seeks to violate the protections provided by the work product doctrine. Defendant further objects to this Interrogatory to the extent that it seeks to invade communications protected from discovery by the attorney-client privilege. Defendant also objects that this request is overbroad and unduly burdensome in asking Defendant to state "with particularity all facts" supporting its contention.

Subject to these objections, Defendant answers as follows: Progressive is an equal opportunity employer committed to maintaining a workplace that is free from unlawful discrimination and retaliation. Progressive denies Plaintiff's allegations of discrimination based on his sex. Progressive terminated Plaintiff's employment for legitimate, non-discriminatory business reasons. Plaintiff began his employment with Progressive on October 24, 2016 in Colorado Springs, Colorado. Progressive was aware of his sex, male, at the time that it hired him. Progressive worked with Plaintiff with respect to concerns and questions raised and allowed him to take a personal leave of absence at Plaintiff's request so he could travel across the country to explore whether or not Plaintiff wanted to move across country. Based on performance and behavior issues, on August 24, 2017, Plaintiff was terminated from employment. No decisions regarding Plaintiff were based on his sex, male, or any other protected characteristic or activity. Defendant further incorporates by reference facts revealed in discovery responses, documents produced, and depositions taken in this litigation.

**Interrogatory No. 12:** If defendant contends that plaintiff was not subjected to or a victim of tortious conduct at Progressive, that plaintiff did not suffer severe emotional distress from any tortious conduct by defendant, and or there is no causal connection between defendant's conduct and plaintiff's suffering; state with particularity all facts supporting the contention(s).

**Answer:** Defendant objects that this Interrogatory seeks a dress rehearsal of Defendant's presentation at trial, and thus no response is required. *See, e.g., United States v. Renault, Inc.* 27 F.R.D. 23, 26-27, 29 (S.D.N.Y. 1960); 4a Moore's Federal Practice 33.12 (2d ed. 1980). Defendant also objects to the extent that this Interrogatory seeks the mental impressions of counsel, and thus seeks to violate the protections provided by the work product doctrine. Defendant further objects to this Interrogatory to the extent that it seeks to invade communications protected from discovery by the attorney-client privilege. Defendant also objects that this request is overbroad and unduly burdensome in asking Defendant to state "with particularity all facts" supporting its contention. Subject to these objections, Defendant answers as follows: Defendant incorporates by reference facts revealed in discovery responses, documents produced, and depositions taken in this litigation.

**Interrogatory No. 13:** If defendant contends all employees similarly situated and in the same position or job role as plaintiff were treated in an equal manner as plaintiff, state with particularity all facts supporting the contention. In stating with particularity all facts supporting the contention, please state the name, gender, position or job title, and employment dates of all employees and other persons which refer or relate to Requests for Production Nos. 8, 9, 10, 11, 14, 16, 17, and 19 in Plaintiff's First Set of Request for Production of Documents.

**Answer:** Defendant objects that this Interrogatory seeks a dress rehearsal of Defendant's presentation at trial, and thus no response is required. *See, e.g., United States v. Renault, Inc.* 27 F.R.D. 23, 26-27, 29 (S.D.N.Y. 1960); 4a Moore's Federal Practice 33.12 (2d ed. 1980). Defendant also objects to the extent that this Interrogatory seeks the mental impressions of counsel, and thus seeks to violate the protections provided by the work product doctrine. Defendant further objects to this Interrogatory to the extent that it seeks to invade communications protected from discovery by the attorney-client privilege. Defendant also objects that this request is overbroad and unduly burdensome in asking Defendant to state "with particularity all facts" supporting its contention. Subject to these objections, Defendant answers as follows: Defendant incorporates by reference facts revealed in discovery responses, documents produced, and depositions taken in this litigation.

**Interrogatory No. 14:**   If defendant contends there is a legitimate nondiscriminatory reason for the acts or events Plaintiff alleges were discriminatory, state with particularity all facts supporting the contention.

**Answer:** Defendant objects that this Interrogatory seeks a dress rehearsal of Defendant's presentation at trial, and thus no response is required. *See, e.g., United States v. Renault, Inc.* 27 F.R.D. 23, 26-27, 29 (S.D.N.Y. 1960); 4a Moore's Federal Practice 33.12 (2d ed. 1980). Defendant also objects to the extent that this Interrogatory seeks the mental impressions of counsel, and thus seeks to violate the protections provided by the work product doctrine. Defendant further objects to this Interrogatory to the extent that it seeks to invade communications protected from discovery by the attorney-client privilege. Defendant also

objects that this request is overbroad and unduly burdensome in asking Defendant to state

"with particularity all facts" supporting its contention.

Subject to these objections, Defendant answers as follows: Progressive is an equal

opportunity employer committed to maintaining a workplace that is free from unlawful

discrimination and retaliation. Progressive denies Plaintiff's allegations of discrimination

based on his sex. Progressive terminated Plaintiff's employment for legitimate, non-

discriminatory business reasons. Plaintiff began his employment with Progressive on October

24, 2016 in Colorado Springs, Colorado. Progressive was aware of his sex, male, at the time

that it hired him. Progressive worked with Plaintiff with respect to concerns and questions

raised and allowed him to take a personal leave of absence at Plaintiff's request so he could

travel across the country to explore whether or not Plaintiff wanted to move across country.

Based on performance and behavior issues, on August 24, 2017, Plaintiff was terminated from

employment. No decisions regarding Plaintiff were based on his sex, male, or any other

protected characteristic or activity.  Defendant further incorporates by reference facts revealed

in discovery responses, documents produced, and depositions taken in this litigation.

**Interrogatory No. 15:**  If defendant(s) contends there is a legitimate non-tortious (intentional

inflection of emotional distress or other employment tort) reason for the acts or events

Plaintiff alleges were tortious, and that defendant(s) did not engage in extreme and or

outrageous conduct towards Plaintiff; and there was no intent by defendant(s) to cause, or

disregard of a substantial probability of causing severe emotional distress towards Plaintiff;

state with particularity all facts supporting the contention(s).

**Answer:** Defendant objects that this Interrogatory seeks a dress rehearsal of Defendant's presentation at trial, and thus no response is required. *See, e.g., United States v. Renault, Inc.* 27 F.R.D. 23, 26-27, 29 (S.D.N.Y. 1960); 4a Moore's Federal Practice 33.12 (2d ed. 1980). Defendant also objects to the extent that this Interrogatory seeks the mental impressions of counsel, and thus seeks to violate the protections provided by the work product doctrine. Defendant further objects to this Interrogatory to the extent that it seeks to invade communications protected from discovery by the attorney-client privilege. Defendant also objects that this request is overbroad and unduly burdensome in asking Defendant to state "with particularity all facts" supporting its contention. Defendant further objects that this Interrogatory does not seek relevant information.

Subject to these objections, Defendant answers as follows: Progressive is an equal opportunity employer committed to maintaining a workplace that is free from unlawful discrimination and retaliation. Progressive denies Plaintiff's allegations of discrimination based on his sex. Progressive terminated Plaintiff's employment for legitimate, non-discriminatory business reasons. Plaintiff began his employment with Progressive on October 24, 2016 in Colorado Springs, Colorado. Progressive was aware of his sex, male, at the time that it hired him. Progressive worked with Plaintiff with respect to concerns and questions raised and allowed him to take a personal leave of absence at Plaintiff's request so he could travel across the country to explore whether or not Plaintiff wanted to move across country. Based on performance and behavior issues, on August 24, 2017, Plaintiff was terminated from employment. No decisions regarding Plaintiff were based on his sex, male, or any other

protected characteristic or activity. Defendant further incorporates by reference facts revealed in discovery responses, documents produced, and depositions taken in this litigation.

**Interrogatory No. 16:** If defendant contends the employer, Progressive, is not vicariously liable for employees' torts under the theory of respondeat superior because the employer had no actual knowledge of any tortious conduct even after defendant was made aware of the alleged conduct complained of in this suit by Plaintiff; and defendant further contends they did take adequate steps to remedy the situation; state with particularly all facts supporting the contention(s).

**Answer:** Defendant objects that this Interrogatory seeks a dress rehearsal of Defendant's presentation at trial, and thus no response is required. *See, e.g., United States v. Renault, Inc.* 27 F.R.D. 23, 26-27, 29 (S.D.N.Y. 1960); 4a Moore's Federal Practice 33.12 (2d ed. 1980). Defendant also objects to the extent that this Interrogatory seeks the mental impressions of counsel, and thus seeks to violate the protections provided by the work product doctrine. Defendant further objects to this Interrogatory to the extent that it seeks to invade communications protected from discovery by the attorney-client privilege.  Defendant also objects that this request is overbroad and unduly burdensome in asking Defendant to state "with particularity all facts" supporting its contention.

Subject to these objections, Defendant answers as follows: Progressive is an equal opportunity employer committed to maintaining a workplace that is free from unlawful discrimination and retaliation. Progressive denies Plaintiff's allegations of discrimination based on his sex. Progressive terminated Plaintiff's employment for legitimate, non-discriminatory business reasons. Plaintiff began his employment with Progressive on October

24, 2016 in Colorado Springs, Colorado. Progressive was aware of his sex, male, at the time that it hired him. Progressive worked with Plaintiff with respect to concerns and questions raised and allowed him to take a personal leave of absence at Plaintiff's request so he could travel across the country to explore whether or not Plaintiff wanted to move across country. Based on performance and behavior issues, on August 24, 2017, Plaintiff was terminated from employment. No decisions regarding Plaintiff were based on his sex, male, or any other protected characteristic or activity. Defendant further incorporates by reference facts revealed in discovery responses, documents produced, and depositions taken in this litigation.

**Interrogatory No. 17:** If defendant contends defendant's employment practices in this suit are neutral as to discrimination and tortious conduct, and furthermore, neutral as to discriminatory and or tortious practices under the concept of respondeat superior, state with particularity all facts supporting the contention(s).

**Answer:** Defendant objects that this Interrogatory seeks a dress rehearsal of Defendant's presentation at trial, and thus no response is required. *See, e.g., United States v. Renault, Inc.* 27 F.R.D. 23, 26-27, 29 (S.D.N.Y. 1960); 4a Moore's Federal Practice 33.12 (2d ed. 1980). Defendant also objects to the extent that this Interrogatory seeks the mental impressions of counsel, and thus seeks to violate the protections provided by the work product doctrine. Defendant further objects to this Interrogatory to the extent that it seeks to invade communications protected from discovery by the attorney-client privilege. Defendant also objects that this request is overbroad and unduly burdensome in asking Defendant to state "with particularity all facts" supporting its contention.

Subject to these objections, Defendant answers as follows: Progressive is an equal opportunity employer committed to maintaining a workplace that is free from unlawful discrimination and retaliation. Progressive denies Plaintiff's allegations of discrimination based on his sex. Progressive terminated Plaintiff's employment for legitimate, non-discriminatory business reasons. Plaintiff began his employment with Progressive on October 24, 2016 in Colorado Springs, Colorado. Progressive was aware of his sex, male, at the time that it hired him. Progressive worked with Plaintiff with respect to concerns and questions raised and allowed him to take a personal leave of absence at Plaintiff's request so he could travel across the country to explore whether or not Plaintiff wanted to move across country. Based on performance and behavior issues, on August 24, 2017, Plaintiff was terminated from employment. No decisions regarding Plaintiff were based on his sex, male, or any other protected characteristic or activity. Defendant further incorporates by reference facts revealed in discovery responses, documents produced, and depositions taken in this litigation.

**Interrogatory No. 18:**  For the 1 year period immediately preceding Plaintiff's Progressive Academy graduation, denial of promotions, and termination, reveal each employment decision defendant made regarding Plaintiff's seniority, merit system, time of graduation from Academy, denial of promotions, and termination.  Please include the date and identity of the persons who made each decision and the employees subject to each decision, and whether defendant received any notice of dispute resulting from each decision.

**Answer:** Defendant objects to this request to the extent that it calls for a narrative by asking Defendant to describe "each decision defendant made" with respect to Plaintiff's employment as well as the person(s) who made the decision and the actions taken by each individual.

Defendant also objects to this Interrogatory to the extent that it purports to be a single interrogatory and that it impermissibly contains multiple subparts. *See, e.g., Wildearth Guardians v. Public Service Co. of Colorado*, 2010 WL 5464313 (D. Colo. Dec. 29, 2010) ("once a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated.").

Subject to these objections, Defendant answers as follows: pursuant to Rule 33(d), in lieu of answering, Defendant is producing document sufficient to show decisions made with respect to Plaintiff's employment throughout his employment with Defendant.

**Interrogatory No. 19:** Why did Defendant (or counsel for Defendant) remind Plaintiff about the arbitration agreement between the parties only for the Defendant (or counsel for Defendant) to refuse to pay arbitration fees and refuse to participate in arbitration all prior to Plaintiff making a motion to stay arbitration?

**Answer:** Defendant objects to this Interrogatory as improperly seeking Defense counsel's mental impressions. Defendant further objects that interrogatories may only be propounded to parties in a lawsuit, and Progressive's counsel is not a party. Defendant will not respond to this Interrogatory on that basis.

**Interrogatory No. 20:** In reference to Plaintiff's REQUEST FOR PRODUCTION NO. 20: *"Please produce a photograph, picture, image in electronic file format (.tif, .jpeg, .pdf, etc.), or some other form of visual media which fully and clearly reveals Greg Lofthus's tattoo on his arm of a dog (or other canine such as a wolf) which was given to him by Progressive (or paid for by Progressive)."*

Please describe what this dog (or wolf or other canine) tattoo on Greg Lofthus's arm means to Greg. Please describe what this dog (or wolf or other canine) tattoo on Greg Lofthus's arm means to Progressive.

**Answer:** Defendant objects that the information sought by this Interrogatory is not relevant or reasonably likely to lead to the discovery of relevant or admissible evidence. Defendant also objects that this Interrogatory is unduly invasive of the privacy interests of non-parties to this lawsuit and not proportional to the needs of discovery. Defendant will not respond to this Interrogatory on that basis.

**Interrogatory No. 21:** In reference to Plaintiffs REQUEST FOR PRODUCTION NO. 21: *"Please produce a photograph, picture, image in electronic file format (.tit, .jpeg, .pdf, etc.), or some other form of visual media which reveals any tattoo(s) on Beverly Auld-Feldman, Jim Lawson, and or Charlie Baughman given to them by Progressive (or paid for by Progressive)."*

Do other Progressive employees (specifically in the Academy department and senior management) have tattoos given to them or paid for by Progressive? If Beverly Auld-Feldman, Jim Lawson, and or Charlie Baughman have tattoos given to them or paid for by Progressive [similar to Greg Lofthus's doggy tattoo on his arm], please describe what their respective tattoos mean to each of them. Please describe what each of their respective tattoos mean to Progressive.

**Answer:** Defendant objects that the information sought by this Interrogatory is not relevant or reasonably likely to lead to the discovery of relevant or admissible evidence. Defendant also objects that this Interrogatory is unduly invasive of the privacy interests of non-parties to this

lawsuit and not proportional to the needs of discovery. Defendant will not respond to this Interrogatory on that basis.

**Interrogatory No. 22**: In reference to Plaintiffs REQUEST FOR PRODUCTION NO. 22: *"Please produce any and all [not insurance policy related] documents and or communications between Progressive (or employees of Progressive) and Plaintiff's family members [who live or lived in Pennsylvania] for the time period of January 1st, 2011 until present."*

Was Progressive or were Progressive employees aware of Plaintiff's parents visit to Colorado Springs, CO just before Memorial Day of 2017?   If Progressive employees were aware, or became aware of Plaintiff's parents visit to Colorado Springs, describe how Progressive employees found out or knew Plaintiff's parents were in Colorado Springs, CO, and describe what communications or other interactions took place between Progressive employees and Plaintiff's parents or other family members of Plaintiff.

**Answer:** Defendant objects that the information sought by this Interrogatory is not relevant or reasonably likely to lead to the discovery of relevant or admissible evidence. Defendant further objects that this Interrogatory is overbroad and unduly burdensome in that the terms "Progressive" and "Progressive employees" encompass all employees without limitation by title, location, dates of employment, etc.  It is not proportional to the needs of this case for that reason. Subject to this objection, Defendant responds that it has made a good faith effort to ascertain whether Rebecca Coffey, Beverly Auld-Feldman, Charlie Baughman, Steve "Jim" Lawson, Greg Lofthus, or Briana Vanier were aware of Plaintiff's parents visit to Colorado Springs on the date in question and they have no knowledge of this alleged event.

**Interrogatory No. 23**:  Please identify any religious/cultural institutions, organizations, or cults which Greg Lofthus, Beverly Auld-Feldman, Jim Lawson, and or Charlie Baughman belong to or are affiliated with.  Are there other Progressive employees (specifically in the Academy department and senior management) who belong to any of the same religious/cultural institutions, organizations, or cults of the aforementioned individuals?   Can you describe any religious, cultural, other requirements, restrictions, tattoos (or other markings), languages, or codes (or other symbols) used within the religious/cultural institutions, organizations, or cults which the aforementioned individuals belong to or are affiliated with?

**Answer:** Defendant objects that the information sought by this Interrogatory is not relevant or reasonably likely to lead to the discovery of relevant or admissible evidence. Defendant also objects to the extent that this purports to be a single interrogatory and that it impermissibly contains multiple subparts. *See, e.g., Wildearth Guardians v. Public Service Co. of Colorado*, 2010 WL 5464313 (D. Colo. Dec. 29, 2010) ("once a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated."). Finally, Defendant objects that this Interrogatory is unduly invasive of the privacy interests of non-parties to this lawsuit. Defendant will not respond to this Interrogatory on that basis.

**Interrogatory No. 24:** In reference to Plaintiffs REQUEST FOR PRODUCTION NO. 23:

*"Please produce any and all documents and or agreements that refer or relate to labor and employment which were created, discussed, reviewed, negotiated, signed, and or executed during the meeting(s) of Mayor John Suthers and Governor John Hickenlooper at or with Progressive Insurance while Plaintiff was employed with Progressive. Please also include in this production any such documents or agreements which were created, discussed, reviewed, and or negotiated during the aforementioned meeting(s) but which were signed and or executed at another time and or place."*

Please explain the nature of the meeting(s) at, or with Progressive by Mayor John Suthers and Governor John Hickenlooper while Plaintiff was employed at Progressive. Please identify any and all Progressive employees whom had any meeting with John Suthers and John Hickenlooper and describe the topics of the meeting(s) and any communications. Specifically, was Plaintiff a topic of any meeting or communication between Progressive and the aforementioned politicians, and was the hiring of about 900 more employees at Progressive's Colorado Springs site a topic of any meeting or communication?

**Answer:** Defendant objects that the information sought by this Interrogatory is not relevant or reasonably likely to lead to the discovery of relevant or admissible evidence. Defendant also objects that this Interrogatory is vague and ambiguous in that it does not identify a specific meeting or event about which it seeks information. It is also not proportional to the needs of discovery and overbroad and unduly burdensome for that reason. Finally, Defendant objects to the extent that this purports to be a single interrogatory and that it impermissibly contains multiple subparts. *See, e.g., Wildearth Guardians v. Public Service Co. of Colorado,* 2010 WL

24

5464313 (D. Colo. Dec. 29, 2010) ("once a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated.").

Subject to these objections, Defendant responds that John Suthers attended an opening of Fire Station 22 on April 4, 2016, which is located nearby Progressive, and Progressive employees were also in attendance. The Pikes Peak WorkForce Center also hosted Mayor Hickenlooper on May 11, 2018, which is an event some Progressive employees attended. The city councilpersons, local Chamber, and the Colorado Springs Mayor have all visited Progressive on occasion, but not during the timeframe during which Plaintiff was employed. Their visits have not involved any negotiations, or contracts signed/reviewed.

**Interrogatory No. 25:**  Please explain Progressive's role(s) and or goal(s), if any, in public finance which refer or relate to labor and employment for cities specifically in Colorado and Ohio (Ohio being where Progressive's headquarters is.)  In your explanation, please describe how Progressive functions, communicates, and or works with politicians such as Colorado Governor John Hickenlooper and Ohio Governor John Kasich to carry out Progressive's role(s) and or goal(s) in public finance.

**Answer:** Defendant objects that the information sought by this Interrogatory is not relevant or reasonably likely to lead to the discovery of relevant or admissible evidence. It is also not proportional to the needs of this case for that reason.  Subject to this objection, Defendant answers as follows: city councilpersons, local Chamber, and the Mayor of Colorado Springs

have all visited Progressive in their official capacities, but their visits have not involved any negotiations, business deals, or contracts signed/reviewed.

DATED this 21st day of December, 2018.

Margaret Parnell Hogan
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO  80202
Phone:  303.629.6200
Fax: 303.629.0200
Email: mphogan@littler.com

ATTORNEYS FOR DEFENDANT

I hereby certify that on this 21st day of December, 2018, a true and correct copy of the foregoing **DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR DOCUMENT PRODUCTION** was served on the following via U.S. Mail, postage prepaid and FedEx:

Justin Mohn
1625 E. Woodmen Rd, Apt. 49
Colorado Springs, CO  80920
justindmohn@gmail.com

*Pro se*

*s/Arlene Aguilar*
Arlene Aguilar

## VERIFICATION

I, Jim Lawson, am a Senior Human Resources Consultant for Defendant Progressive Casualty Insurance Company ("Progressive" or "Defendant"). By virtue of my position, I have access to Progressive's business and employment records. I have reviewed Defendant's Responses to Plaintiff's First Interrogatories to Defendant. Certain of the matters set forth in Defendant's responses are not within my personal knowledge; however, the information is based upon facts compiled from employees and/or business records, and I am informed and believe that the information provided therein is true and correct.

Duly signed under oath on this 20th day of December, 2018.

_____
Jim Lawson

State of Colorado
County of El Paso

Signed 20th Day of December, 2018

Jeanette Lumsden

JEANETTE LUMSDEN
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID # 20004019567
My Commission Expires 07-15-2020

**EXHIBIT E**

15 And he had power to give ³ life unto the image of the beast, that the image of the beast should both speak, ⁹ and cause that as many as would not worship the image of the beast should be killed.

16 And he causeth all, both small and great, rich and poor, free and bond, ʰ⁴ to receive a mark in their right hand, or in their foreheads:

17 And that no man might buy or sell, save he that had the mark, or

*The Lamb on mount.*

ⁱ the name of the beast, ᵏ or the number of his name.

18 ˡ Here is wisdom. Let him that hath understanding count ᵐ the number of the beast: ⁿ for it is the number of a man; and his number is six hundred threescore *and* six.