**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Senior Judge Marcia S. Krieger**

**Civil Action No. 18-cv-00812-MSK-KMT**

**JUSTIN MOHN,**

**Plaintiff,**

**v.**

**PROGRESSIVE INSURANCE,**

**Defendant.**

---

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court pursuant to Mr. Mohn's pro *se*[1] Motion for Summary Judgment **(# 51)**, and the Defendant's ("Progressive") response **(# 55)**; and Progressive's Motion for Summary Judgment **(# 58)**, Mr. Mohn's response **(# 60)**, and Progressive's reply **(# 63)**. Also pending are a motion by Mr. Mohn to restrict access **(# 52)** to certain documents that were filed as exhibits within his summary judgment motion, Mr. Mohn's motion seeking reassignment of the Magistrate Judge in this case **(# 56),** and Mr. Mohn's motion seeking a hearing on his outstanding motions **(# 57)**.[2]

## FACTS

The Court summarizes the pertinent facts here and elaborates as necessary in its analysis.

---

[1] Due to Mr. Mohn's *pro se* status, the Court construes his filings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

[2] The Court denies the motion to reassign the Magistrate Judge, finding that no good cause for reassignment has been shown. The Court denies the motion for a hearing as moot.

In October 2016, Progressive hired Mr. Mohn as a Customer Service Representative. As part of Progressive's training, newly-hired employees are assigned to a program called the "Academy." Mr. Mohn understood that the Academy training program was not of any set duration, but rather, trainees graduated from the program once their training supervisor concluded that they had adequately met certain performance goals. Mr. Mohn contends that his performance at the Academy warranted his graduation earlier than Progressive approved. He also contends that female trainees in his Academy class were approved for graduation before he was and that they received higher pay than he did. Thus, he contends that Progressive discriminated against him on the basis of his sex with regard to the Academy program.

After graduating from the Academy program, Mr. Mohn began working for Progressive in its Colorado Springs, Colorado office. In June 2017, Mr. Mohn inquired about applying for other open positions at Progressive. One of his managers, Charlie Baughman, advised Mr. Mohn that, as a general rule, Progressive required Customer Service Representatives to have completed a full year in that position before they would be permitted to apply for other openings. But Mr. Baughman also told Mr. Mohn that he would consider waiving that requirement if a candidate had particular experience that uniquely qualified him or her for an open position. It is not entirely clear from the record, but it appears that Mr. Mohn applied for a Senior Copywriter position with Progressive in July 2017, but was not selected for that position. Mr. Mohn also requested Mr. Baughman permit him to apply for an open IT Service Desk position, but Mr. Baughman refused.[3] Mr. Mohn contends that rejection of his application for the copywriter

[3] Mr. Mohn may also have expressed interest in applying for a legal assistant position at some point in time, but the circumstances relating to that issue are not meaningfully developed in the record. Were the Court to consider that issue, its analysis would be identical to the analysis regarding the IT Service Desk position and the outcome would be the same.

position and refusal to endorse an application for the IT Service Desk position are additional instances of discrimination against him because of his sex.

On July 28, 2017, Mr. Mohn sent an e-mail to Progressive's Human Resources department, complaining that his coach and manager at the Academy "purposely [held] an employee like me back . . . with the intent of destroying my livelihood during the Academy . . . because of my learning pace being too fast and my overqualifications and overeducation for such a role." Mr. Mohn also stated that "I now expect to be put on a faster pace of promotions than others" or be "place[d] in a fitting position as soon as possible . . . rather than allowing the situation to escalate." Mr. Mohn warned that if he was terminated or "forc[ed] into constructive discharge," it would "result in immediate legal actions and would include me using my publishing capability to publicly reveal [Progressive's] violations of [its] core values as well as civil rights or labor law violations."

On August 5, 2017, Mr. Mohn allegedly kicked open an office door. Progressive placed Mr. Mohn on a paid leave of absence pending investigation into the incident. On or about August 16, 2017, Progressive terminated Mr. Mohn for violating various provisions of Progressive's Code of Conduct, primarily relating to his kicking open the door. Mr. Mohn contends that his termination constituted another instance of discrimination against him based on his sex.

The parties appear to agree that Mr. Mohn to assert a single claim of discrimination on the basis of sex in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* arising from these events. Both Mr. Mohn and Progressive have moved **(# 51, 58)** for summary judgment in their favor on that claim.

## ANALYSIS

**A. Standard of review**

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material

fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

This case involves cross-motions for summary judgment. Because the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a *prima facie* case or to establish a genuine dispute as to material fact, these motions must be evaluated independently. S*ee: Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."); *In re Ribozyme Pharmaceuticals, Inc., Securities Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002).

**B. Progressive's motion**

Because the Court ultimately finds that a ruling on Progressive's motion disposes of this case, the Court considers that motion first.[4]

---

4 In addition to considering Mr. Mohn's response to Progressive's motion, the Court has also considered Mr. Mohn's arguments and evidence in support of his own summary judgment motion to the extent they bear on the issues raised in Progressive's motion.

To establish a claim of sex discrimination under Title VII, Mr. Mohn bears the initial burden of establishing a *prima facie* case of discrimination by showing: (i) that he is a member of a protected class (that is, he is a male)[5]; (ii) that he had the minimum qualifications for the position he held and/or sought; (iii) that he suffered an adverse action; and (iv) that the adverse action occurred in circumstances giving rise to an inference of discrimination. *See generally St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993); *see also EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007). If Mr. Mohn carries that burden, Progressive has the burden to articulate a legitimate, non-discriminatory reason for the adverse action, and Mr. Mohn bears the ultimate burden of coming forward with evidence that could establish that Progressive's tendered reason is a pretext for sex discrimination. *Id.*

A fair reading of Mr. Mohn's pleadings suggest that he alleges that he suffered three different adverse actions as a result of his sex: (i) his graduation from the Academy was delayed; (ii) he was not hired for one or more of the open positions he applied for (or that he was

---

5 In situations involving "reverse discrimination" – that is, discrimination against someone outside of "historically or socially disfavored groups" – the 10th Circuit has held that "in lieu of showing that he belongs to a protected group," a plaintiff must "establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Notari v. Denver Water Dept.*, 971 F.2d 585, 589 (10th Cir. 1992). Mr. Mohn certainly has not met this standard. However, *Notari* also contemplates that, as an alternative, a plaintiff might instead show "indirect evidence sufficient to support a reasonable probability, that but for the plaintiff's status the challenged employment decision would have favored the plaintiff." *Id.* at 590. Because this requirement has certain similarities to the fourth element of the *prima facie* case – that the adverse action was taken in circumstances giving rise to an inference of discrimination – one could argue that *Notari* does not compel a fundamentally different analysis in reverse discrimination cases than would apply in ordinary disparate treatment claims. *See Iadimarco v. Runyon*, 190 F.3d 151, 162 (3d Cir. 1999) (suggesting that *Notari*'s "background circumstances" element was unnecessary and that "all that will ever be required of a White-male plaintiff under this test is that he present sufficient evidence to support the reasonable probability of discrimination"). Because this Court finds that all iterations of Mr. Mohn's claims fail at the normal "inference of discrimination" element, if not earlier, the Court need not consider to what extent *Notari* imposes any additional requirements on Mr. Mohn.

prohibited from applying for certain open positions by Mr. Baughman); and (iii) that he was terminated. The Court will analyze each claim separately.

### 1. <u>Graduation from the Academy</u>

Mr. Mohn contends that, because he was an "early top performer," he should have graduated from the Academy earlier than he did. He also alleges that female trainees in his Academy class graduated more quickly than he did and that the female trainees were paid more than he was. The Court will assume, without necessarily finding, that each of these allegations identifies an adverse action sufficient to satisfy the third element of Mr. Mohn's *prima facie* case. However, Mr. Mohn has not come forward with evidence that these events occurred or if they occurred that they were the result of any discrimination based on sex.

#### A. Mr. Mohn's own performance

Beginning with Mr. Mohn's graduation date, Mr. Mohn testified in his deposition that he understood that the Academy trainees typically graduated after 10-12 weeks of training. Mr. Mohn graduated on or about March 7, 2017, which, according to Progressive's records, was 13 weeks after his training began. Thus, it appears that Mr. Mohn's tenure within the Academy was perhaps only slightly longer than average.

Mr. Mohn argues that his performance at the Academy was always exceptional, such thus he should have graduated much earlier. In his deposition, he testified that he believed that he could graduate with only 8-9 weeks of training. But the evidence Mr. Mohn points to as establishing his status as a "top performer" and "outstanding employee" does not reflect his beliefs. For example, Mr. Mohn points to, among other things, his 2016 Performance

Evaluation.[6] (Docket #53, Bates # 25-28)[7] That document indicates that, on a scale of 1-5 (with 5 reflecting "Extraordinary" performance and 4 reflecting "Outstanding" performance), Mr. Mohn was given neither. Instead, he had an overall rating of "3.0 – Successful." Mr. Mohn's 2017 Interim Performance Evaluation contains rankings of 3 and 4 in various categories, with an overall rating of "4.0 – Outstanding", but it contains several areas in which Mr. Mohn's performance required improvement. For example, although it ranked Mr. Mohn as "outstanding" in the job objective of "Customer Service – Grow," Mr. Mohn's manager commented that his AFR[8] on a month-to-month basis was *not at peer average.*

Progressive has tendered e-mails between Mr. Mohn and Mr. Greg Lofthus, his supervisor at the Academy, in which Mr. Mohn's performance is discussed. In a January 31, 2017 e-mail, Mr. Mohn summarizes his understanding of meeting he had with Mr. Lofthus that day, in which Mr. Lofthus gave Mr. Mohn instructions on how to improve his performance. Among the items Mr. Mohn lists are "Always code offers before I hang up!" and "I need to focus on my HHV consistency and PHA take rate." (Statistics attached to the e-mail indicate that Mr. Mohn had apparently failed to meet "take rate" expectations for both the week of January 22 and

---

[6] Although this document is titled "2016 Performance Evaluation," it is signed and dated by Mr. Mohn and his supervisor as of July 27, 2017, long after Mr. Mohn completed the Academy. It is not entirely clear whether the evaluation reflects only Mr. Mohn's performance during the Academy program, or whether is also includes evaluation of his work after graduating from the Academy. Regardless, because Mr. Mohn has tendered the document as proof of his outstanding performance at the Academy, the Court construes it as primarily, if not entirely, reflecting Progressive's evaluation of him at that point in his training.

The same observations apply to the 2017 Interim Performance Evaluation, discussed *infra.*

[7] Future references to Progressive documents found in Docket # 53 will simply refer to the relevant Bates number – *e.g.* "#27."

[8] The meaning and significance of this and many of the abbreviations used by Progressive are not explained in the record.

January 31.) In an e-mail on February 10, 2017, Mr. Mohn confirmed his understanding of instructions given by Mr. Lofthus in another meeting on the prior day. Mr. Mohn mentions, among other things, "I need to get my HHV back to how it was in the first weeks of January before I can graduate." In an e-mail exchange between February 17 and February 19, 2017, Mr. Lofthus told Mr. Mohn "you did a great job applying yourself these past two weeks," and compliments Mr. Mohn on his improved take rate. Mr. Mohn responded that he made a particular effort to achieve those numbers in response to "information about graduation expectations from us in academy Beverly [Mr. Lofthus' supervisor] provided me last Friday." (Mr. Lofthus responded that "I'm a little confused on why you didn't understand graduation expectations. I was clear on what numbers you needed to meet and show consistency with before you could graduate.")

Taken together, this evidence indicates that Mr. Mohn's performance at the Academy, particularly through January and early February 2017, was somewhat short of "outstanding," much less that it was so exceptional as to warrant Mr. Mohn graduating early as compared to at or about the average of 10-12 weeks of training. Although it appears that Mr. Mohn's performance improved significantly by mid-to-late February, Mr. Lofthus' February 19, 2017 e-mail makes clear that he still expected Mr. Mohn to "show consistency" with those superior results "before you could graduate." These instructions are entirely consistent with what actually occurred – Mr. Mohn apparently maintained his superior performance from late February for an additional two weeks and graduated on March 7.

The Court pauses here to emphasize the limited scope of its review of Progressive's employment decisions. The Court does not sit as a "super-personnel department," evaluating whether Progressive's decisions were wise, objectively-correct, or even fundamentally fair.

Employers can make mistaken employment decisions or exercise poor business judgment without engaging in prohibited discrimination. The Court's focus is on whether the employer "honestly believed" the reasons it gave for taking a particular action and whether it acted in good faith in accordance with those beliefs. *Dewitt v. Southwestern Bell Telephone Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017). Thus, the question is not whether the Court or a juror would have concluded that Mr. Mohn's performance at the Academy was exceptional or outstanding or merely successful; the question is whether Progressive (or, more accurately, Mr. Lofthus and his supervisors) subjectively believed that his performance was exceptional or outstanding or merely successful, and whether the actions they took are consistent with those beliefs.

Here, the record indicates that Progressive found Mr. Mohn's performance during the initial phases of the Academy to be satisfactory but in need of additional effort. It was not until late February 2017 that Mr. Mohn's performance became sufficiently strong and consistent such that graduation from the Academy was appropriate, and his graduation in early March followed quickly thereafter. These circumstances do not give rise to an inference that Mr. Mohn was sufficiently skilled to have graduated from the Academy early, or that Progressive discriminated against Mr. Mohn in not approving him for graduation prior to March 2017. The Court appreciates that Mr. Mohn believed that his performance warranted an earlier graduation date, but an employee's own subjective assessment of his performance is irrelevant; it is the perception of employer that matters. *Tran v. Trustees of State Colleges*, 355 F.3d 1263, 1270 (10th Cir. 2004). Based on the evidence of record, Progressive's managers approved Mr. Mohn for graduation promptly once they were satisfied with the quality and consistency of his performance.

Accordingly, Mr. Mohn has not demonstrated a *prima facie* case of discrimination

relating to Progressive's failure to approve him for graduation prior to March 7, 2017.

**B. Mr. Mohn's performance relative to female trainees**

Mr. Mohn also argues that he was discriminated against on the basis of his sex because female trainees from his Academy class were allowed to graduate earlier than he did. One of the ways that an employee can demonstrate circumstances giving rise to an inference of discrimination is by showing that similarly-situated employees outside of the protected class (here, that means female employees) were treated more favorably than the employee. *Clincy v. Transunion, LLC*, 684 Fed.Appx. 680, 684 (10th Cir. 2017).

Mr. Mohn's training class, as recounted in his deposition, appears to be reflected in #551. It consisted of 9 individuals (including Mr. Mohn), all apparently hired at approximately the same time. Going solely by first names, seven of the nine members of the class (the exceptions being Mr. Mohn and an individual named Eric) apparently were female. Three women graduated on February 11, 2017, 10 weeks from their date of hire as calculated by Progressive. Three more women graduated on February 25, 2017, between 10 and 12 weeks from their date of hire. Mr. Mohn and the other man graduated on the same date after 13 weeks of training, and the last woman graduated on March 24, 2017 after 16 weeks of training.[9]

The Court has some doubt that any conclusions can be drawn from this information alone. The small sample size and minimal disparities between, say, Mr. Mohn's graduation after 13 weeks and a woman's graduation after, say, 12 weeks offer little statistical value. But even so, Mr. Mohn's evidence on this point fails for a simpler reason – Mr. Mohn has not come forward with evidence that he was similarly-situated to any of the women in any relevant

---

[9] Mr. Mohn testified that this last female's graduation was delayed because she "hurt her hip" and apparently took some time off to recover.

category of performance. Statistical evidence has little probative value unless it compares comparable individuals. *Turner v. Public Service Co.*, 563 F.3d 1136, 1147 (10th Cir. 2009).

Thus, Mr. Mohn must demonstrate that the women who graduated before he did were performing at or below his level of performance. Mr. Mohn has not done so. Although his deposition testimony reflects his own evaluation of the relative performance of female classmates, his personal opinions about relative performance are irrelevant. What matters is how Progressive assessed each trainee's performance. If the evidence showed that female trainees who graduated earlier than Mr. Mohr had job evaluations, similar quantitative metrics, similar criticisms from Mr. Lofthus, and so on, to those of Mr. Mohr, a disparity in graduation times might be sufficient to permit an inference of sex discrimination. But Mr. Mohn has not tendered any documents reflecting Progressive's qualitative evaluations of any female trainee.[10] Thus, the mere statistical disparities show in #551 fail to give rise to an inference of discrimination, and Mr. Mohn has not demonstrated a colorable *prima facie* case of sex discrimination relating to the relative graduation dates of him and his fellow trainees.

**C. Pay**

Finally, Mr. Mohn contends that he was paid less than female trainees in his Academy class. The sole evidence tendered by Mr. Mohn on this point is a spreadsheet, #165-170, listing various employees and the pay rates they received at various times. As to Mr. Mohn, the documents reflect that he was paid at a rate of $16 per hour from October 24 – December 3,

---

10 Mr. Mohn conceded at his deposition that he had no personal knowledge of his fellow trainee's metrics or performance on phone calls. He mentions having seen "global e-mails" that demonstrate the relative performance of his training class. But his summary judgment response does not identify any such e-mails and the Court's review of the documents Mr. Mohn has tendered in support of his motion and response did not reveal any that discussed the performance of anyone else in the training class.

2016, a rate of $16.24 per hour from December 4, 2016 to January 28, 2017; and a rate of $16.48 per hour from January 29, 2017 until his graduation from the Academy. The exact same pay rates and adjustment dates were applicable to several women in Mr. Mohn's Academy class, including Angela Ackerman, Donna Dover, Natasha Franklin, and Rachel Wixon. Three women – Terri Johnson, Yvette Dominy, and Allison Lopp – were paid more than Mr. Mohn (by either $0.25 to $0.50 per hour), but so was the other man in the training class. Thus, the spreadsheet evidence does not create an inference that Mr. Mohn was paid less than female trainees because he is male. Several women received the same pay rate that he did and the other male trainee was paid more than he was. Pay rates can be set based on a variety of criteria, including prior experience, credentials, and performance, among others. Mr. Mohn's failure to demonstrate that he possessed the same experience, credentials, performance, and other relevant criteria as Ms. Johnson, Ms. Dominy, and Ms. Lopp prevent him from demonstrating an inference that their higher pay was the result of their sex, rather than a result of other factors. Accordingly, Mr. Mohn has failed to demonstrate a *prima facie* case with regard to his allegations of pay discrimination.

**2. Applications for other positions**

Next, the Court turns to Mr. Mohn's claims that he was denied a transfer to an open copywriter position (and possibly an IT help desk position as well[11]) due to his sex. The Court

---

[11] It is not clear whether Mr. Mohn actually applied for the copywriter and IT positions, or whether he requested that Mr. Baughman allow him to apply for the positions by waiving Progressive's requirement that employees complete a full year of service before seeking an internal transfer. (It appears, at least, that Mr. Baughman denied Mr. Mohn permission to apply for the IT position.) Whether Mr. Mohn applied and was rejected, or whether he requested permission to apply and such permission was denied, is ultimately irrelevant, as it appears undisputed that Mr. Baughman's criteria for granting permission to apply was whether Mr. Mohn met the qualifications for the posted opening. Thus, either approach yields the same conclusion - Mr. Mohn was rejected because of a lack of qualifications.

will assume, without finding, that such a transfer would constitute an adverse employment action.

Mr. Mohn fails to demonstrate a *prima facie* case about the transfer(s) because he has not come forward with evidence that he met the minimum objective qualifications for the position. *See Laul v. Los Alamos Natl. Labs.,* 714 Fed.Appx. 832, 838 (10th Cir. 2017). The copywriter position description indicated that the "minimum requirements" for the job were either a "bachelor's degree in Communications, Journalism, English, Liberal Arts," and the like, or, alternatively, "a minimum of 8 years' creative writing experience and experience as a copywriter." At his deposition, Mr. Mohn conceded that he does not have a degree in any of the fields listed – the record reflects that his degree is in Agribusiness Management – and he acknowledged that he did not possess 8 years of creative writing experience or experience as a copywriter. Thus, Mr. Mohn has not demonstrated a *prima facie* case of sex discrimination relating to his rejection from that position.[12]

The same appears to be true for the IT position. The record does not contain any position description for that opening, but an e-mail exchange between Mr. Mohn and Mr. Baughman on July 22, 2017 makes clear that there are "minimum requirements of this position" included in the job posting that Mr. Baughman believed Mr. Mohn did not meet. Notably, in discussing the IT job at his deposition, Mr. Mohn did not take the position that he <u>did</u> meet the minimum requirements. Rather, Mr. Mohn seems to explain that he simply misunderstood what

---

12 Mr. Mohn argues that the candidate Progressive selected for the copywriter position did not meet the stated qualifications either. It is unclear how Mr. Mohn reaches this conclusion. The successful candidate was Julie Goulis, and her resume is found at #354-355. Ms. Goulis' resume indicates that she has held Senior Copywriter positions from March 2000 through September 2009, and has worked as a freelance copywriter since then. Thus, Ms. Goulis clearly satisfied the alternative requirement of 8+ years of creative writing and copywriting experience.

the minimum requirements for the job were: "what I was thinking was that it was an entry-level role that would take people regardless of their experience, even if they didn't have experience in the IT field." In any event, Mr. Mohn bears the burden of establishing a *prima facie* case, and in the absence of evidence demonstrating that he possessed the minimum objective qualifications for the IT job, he has failed to carry that burden of proof.

Accordingly, Progressive is entitled to summary judgment on Mr. Mohn's claims asserting sex discrimination in the denial of transfer requests.

**3. <u>Termination</u>**

Finally, Mr. Mohn contends that his termination was the result of sex discrimination.

Nominally, the precipitating event for Mr. Mohn's termination on August 5, 2017 was Mr. Mohn's kicking open an office door. The record regarding this event is scant, consisting only of Mr. Mohn's testimony about the event. Mr. Mohn conceded that "kick" was "one way of putting it," but he preferred to say that "I opened it with my foot."[13] He acknowledges that his hands were not full at the time, and stated that he occasionally opened doors with his foot "because I used to play soccer."

It is unclear how the event came to Progressive's attention, but shortly thereafter, Progressive placed Mr. Mohn on paid leave while it investigated. The record does not reflect any details about the investigation, but on or about August 17, 2018, Progressive terminated Mr. Mohn's employment. According to a statement issued by Progressive in response to a claim by Mr. Mohn for unemployment insurance benefits, the reason for the termination was that Mr. Mohn "refus[ed] to comply with Progressive's code of conduct which includes, but is not limited

[13] Progressive reported to state authorities that in a meeting on August 16, 2018, Mr. Mohn stated "I believe that I have done that (meaning kick the door) but not with the intention to destroy or damage."

to, Mr. Mohn kicking open our facility doors." Progressive further noted that Mr. Mohn's actions violated various aspects of its code of conduct, including sections relating to "making the right choice"; "harassment free work environment"; "health & safety"; and "we have a responsibility to our fellow employees."

The Court has some doubt as to whether Mr. Mohn has come forward with evidence that suggests that Progressive's decision to terminate him was the result of sex discrimination, such that he has established a *prima facie* case of discrimination. Typically, circumstances giving rise to an inference of discrimination will take the form of discriminatory comments by decisionmakers, more favorable treatment given to similarly-situated individuals accused of violating similar rules, and so on. *See generally Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012). Mr. Mohn has not identified any discriminatory remarks about men made by Tamara Marchese, the decisionmaker responsible for the decision to terminate Mr. Mohn, nor has he identified any female employee who allegedly engaged in similar acts and who was treated more favorably. Nevertheless, even if the Court assumes that Mr. Mohn has satisfied the *prima facie* case, the Court turns to Progressive's stated reason for Mr. Mohn's termination – that by kicking open the door he violated work rules – and considers whether Mr. Mohn has come forward with sufficient evidence to demonstrate a triable question as to whether Progressive's reason is a pretext for sex discrimination.

Mr. Mohn has not. He admits to doing the act – kicking open/opening the door with his foot – that Progressive relied upon. As noted above, this Court is not tasked with deciding whether Progressive's reasons for terminating Mr. Mohn for opening the door with his foot is a good reason or not. Putting aside the question of whether Mr. Mohn's actions did or could have damaged the door or injured anyone standing nearby, it is entirely permissible for an employer to

decide that an employee who occasionally opens doors in such an unorthodox way is not an employee they wish to retain. As noted above, the only constraint on an employer's ability to terminate is that such a decision may not be based on consideration of impermissible criteria such as sex, but Mr. Mohn has not come forward with any substantial evidence that would permit a trier of fact to conclude that his sex was a factor that motivated Progressive's decision. Accordingly, Progressive is entitled to summary judgment on all of Mr. Mohn's sex discrimination claims.

**B. Mr. Mohn's motion**

Because the Court grants summary judgment to Progressive on all of Mr. Mohn's claims for sex discrimination, it is axiomatic that Mr. Mohn's motion for summary judgment in his favor on those claims must be denied.

**C. Motion to restrict**

Mr. Mohn moves to restrict public access to certain documents produced by Progressive under a "confidential" designation pursuant to the parties' Protective Order **(# 46)**. (Progressive subsequently joined in and supplemented **(# 54)** Mr. Mohn's motion.) Although Mr. Mohn lists the subject documents by Bates numbers, the Court notes that the documents have not been electronically-filed in PACER. Instead, they exist in the record only as files on a USB drive conventionally-filed **(# 53)** by Mr. Mohn contemporaneously with his summary judgment motion.

It is not entirely clear how the process of restricted access as contemplated by D.C. Colo. L. Civ. R. 7.2 – which is primarily focused on electronic access to documents filed within the PACER system -- would be implemented about the USB drive, should a member of the public request to review it. In addition, neither party here contends that access to all of the documents

on the USB drive should restricted, thus it is not clear how members of the public could be given access to review some documents on the USB drive, but not others.

Fortunately, the Court can elide this difficulty entirely, as the Court has reviewed all of the documents contained on the USB drive and finds restricted access by the public is not justified as to any document on the drive. The public has a powerful interest in having access to documents that were presented to and considered by the Court. *See generally Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978); *In re Providence Journal Co.*, 293 F.3d 1, 9 (1st Cir. 2002). That interest yields to individual privacy interests only when such interests substantially outweigh the public interest. *See United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997). Mr. Mohn's motion cites only to the parties' confidentiality designations in discovery as a basis for restriction. D.C. Colo. L. Civ. R. 7.2(c)(2) provides that stipulations between the parties or confidentiality designations made pursuant to protective orders do not suffice to overcome the presumption of public access.

Turning to Progressive's arguments, the documents in question "contain confidential information related to Progressive employees and insureds who are not parties to this lawsuit," and disclosure of this (unidentified) information "would expose and potentially embarrass" these third parties. Such references are vague and conclusory, and as such fail to comply with the requirements of D.C. Colo. L. Civ. R. 7.2(c)(2)-(4). Even if Progressive had been specific, the Court finds that the privacy interests of the third parties referred to in the documents – primarily the identities of Mr. Mohn's fellow trainees at the Academy and the pay rates they received during that training – are minimal. These third parties might prefer not to have their names or the rates of pay they earned for a period of a few months in 2016 and 2017 be publicly revealed, but it is difficult to imagine any significant harm to their privacy interests that might flow from

the disclosure of such facts. By contrast, matters such as the pay rates of Mr. Mohn and his fellow trainees are central to Mr. Mohn's claims herein and are specifically discussed by the Court above in its analysis. Thus, the public's interest in having access to the same information reviewed and considered by the Court is substantial. In such circumstances, the Court finds that the parties have not shown that private interests overcome the presumption of public access, and thus, Mr. Mohn's motion is denied. The files in the USB drive shall remain open to public inspection.

## CONCLUSION

For the foregoing reasons, Mr. Mohn's Motion for Summary Judgment **(# 51)**, his Motion to Restrict Access **(# 52)**, his Motion for Reassignment of the Magistrate Judge **(# 56)**, and his Motion for Hearing **(# 57)** are **DENIED**. Progressive's Motion for Summary Judgment **(# 58)** is

**GRANTED**. The Clerk of the Court shall enter judgment in favor of Progressive on all claims and thereafter close this case.

Dated this 3rd day of June, 2019.

**BY THE COURT:**

Marcia S. Krieger
Senior United States District Judge